Filed 6/27/18 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ABBOTT LABORATORIES et al., | D072577 |
| Petitioners, | |
| v. | (Orange County Super. Ct. No. 30-2016-00879117-CU-BT-CXC) |
| THE SUPERIOR COURT OF ORANGE COUNTY, | ORDER DENYING REHEARING, DENYING MOTION FOR JUDICIAL NOTICE, AND MODIFYING OPINION |
| Respondent; | |
| THE PEOPLE ex rel. TONY RACKAUCKAS, as District Attorney, etc., | **NO CHANGE IN JUDGMENT** |
| Real Party in Interest. | |

THE COURT:

The petition for rehearing is denied.  Justices Huffman and O'Rourke concur in the denial; Justice Dato would grant.

The motion for judicial notice is denied.

The opinion is modified as follows:  The number "1560" is changed to "1566" so that the citation starting on line 5 of footnote 15 on page 33 now reads:

> (*People ex rel. Kennedy v Beaumont Investment*, *Ltd.* (2003) 111 Cal.App.4th 102, 127-128, quoting *People v Superior Court* (*Jayhill*), *supra*, 9 Cal.3d at p. 288; see *People ex rel. Harris v Sarpas* (2014) 225 Cal.App.4th 1539, 1566.)

On page 1 of the dissent, the first and second paragraphs are deleted and inserted with the following language to now read:

> As an intermediate appellate court, our primary role is to review final decisions of the superior court for prejudicial error.  We generally avoid broad legal policy pronouncements, leaving that to the Supreme Court and the Legislature.  Sometimes policy considerations can play an important part in our decisions, but even then we take pains to assure that the policy questions are squarely presented by the facts of the case and necessary to the decision we are required to render.
>
> I believe the majority's decision to entertain the writ petition in this case violates each of these salutary guidelines.  The majority then compound this error by deciding the ill-framed legal issue in a manner that will materially impair the interests of California consumers by fundamentally altering the structure of consumer protection laws in this state.  For these reasons, I respectfully dissent.

**This modification does not change the judgment.**

HUFFMAN, Acting P. J.

Copies to:  All parties

2

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ABBOTT LABORATORIES et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF ORANGE COUNTY, <br><br> Respondent; <br><br><br> THE PEOPLE ex rel. TONY RACKAUCKAS, as District Attorney, etc., <br><br> Real Party in Interest. | D072577 <br><br> (Orange County Super. Ct. <br> No. 30-2016-00879117-CU-BT-CXC) |

ORIGINAL PROCEEDINGS in mandate following denial of a motion to strike under Code of Civil Procedure sections 435 and 436, Kim G. Dunning, Judge.  Petition granted.

Kirkland & Ellis and Michael John Shipley, Jay P. Lefkowitz, Adam T. Humann and Yosef Mahmood for Petitioners Teva Pharmaceuticals USA, Inc., Duramed Pharmaceuticals Sales Corp., Inc. and Barr Pharmaceuticals, Inc.

Munger, Tolles & Olson and Jeffrey I. Weinberger, Stuart N. Senator and Blanca F. Young for Petitioners AbbVie Inc. and Abbott Laboratories.

Horvitz & Levy and Jeremy Brooks Rosen, Stanley H. Chen, Janet Y. Galeria, for Chamber of Commerce of the United States of America; Heather Lynn Wallace, for California Chamber of Commerce as Amici Curiae on behalf of Petitioners.

Tony Rackauckas, Orange County District Attorney, Joseph D'Agostino, Assistant District Attorney, Kelly A. Ernby, Deputy District Attorney; Robinson Calcagnie Inc. and Mark P. Robinson, Jr., Kevin F. Calcagnie on behalf of Real Party in Interest.

Dennis J. Herrera, City Attorney, Yvonne R. Mere, Owen J. Clements, Deputy City Attorneys, for the City and County of San Francisco; Michael Feuer, City Attorney, Monica D. Castillo, Deputy City Attorney, for the City of Los Angeles; Mara W. Elliot, City Attorney, Kathryn Turner, Kristine Lorenz, Deputy City Attorneys for the City of San Diego; Richard Doyle, City Attorney, Nora Frimann, Assistant City Attorney for the City of San Jose; James R. Williams, County Counsel, Greta S. Hansen, Danny Chou, Assistants County Counsel, Laura S. Trice, Deputy County Counsel, for Santa Clara County; Jennifer Henning for California State Association of Counties as Amici Curiae on behalf of Real Party in Interest.

Law Office of Valerie T. McGinty and Valerie T. McGinty for Consumer Attorneys of California as Amicus Curiae on behalf of Real Party in Interest.

Xavier Becerra, Attorney General, Nicklas A. Akers, Assistant Attorney General, Michele R. Van Gelderen, Daniel A. Olivas and David A. Jones, Deputy Attorneys General for California Attorney General as Amicus Curiae.

2

Mark Louis Zahner of the California District Attorneys Association and Thomas Atlee Papageorge of the San Diego District Attorney's Office, for the California District Attorneys Association as Amici Curiae.

The Orange County District Attorney (the District Attorney), representing "the People of the State of California," sued petitioners Abbott Laboratories, AbbVie Inc., Teva Pharmaceuticals USA, Inc., Barr Pharmaceuticals, Inc., Duramed Pharmaceuticals, Inc. and Duramed Pharmaceuticals Sales Corp., alleging generally that petitioners engaged in a scheme to keep generic versions of a prescription drug off the market in violation of California's Unfair Competition Law (UCL; Bus. & Prof. Code,[1] § 17200 et seq.). The District Attorney sought an injunction as well as civil penalties and restitution. Petitioners unsuccessfully moved to strike portions of the operative complaint alleging "claims for restitution and civil penalties based on conduct outside the territorial jurisdiction of Orange County."

In this writ proceeding, petitioners ask us to resolve a single issue: whether section 17204 of the UCL "permit[s] a county district attorney to bring a claim that seeks relief for alleged injuries to residents of California counties whom he or she does not represent, based on conduct occurring outside the county he or she serves . . . ." Petitioners argue district attorneys have no authority to prosecute civil actions absent specific legislative authorization, and neither the Government Code, nor Business and Professions Code

---

[1]     Statutory references are to the Business and Professions Code unless otherwise specified.

section 17204, authorize the district attorney of a single county to seek statewide penalties for alleged UCL violations. The California Attorney General has filed an amicus brief on the question, as have the California District Attorneys Association; the City Attorneys of Los Angeles, San Diego, San Francisco, and San Jose, Santa Clara County Counsel, and California State Association of Counties (collectively the city attorneys); the United States and California Chambers of Commerce (collectively Chambers of Commerce); and the Consumer Attorneys of California.

We grant the petition. The California Constitution designates the Attorney General the "chief law officer of the State" (Cal. Const., art. V, § 13), and consistent with this constitutional provision, the Attorney General "has charge, as attorney, of all legal matters in which the State is interested" (Gov. Code, § 12511) and also "shall . . . prosecute or defend all causes to which the State . . . is a party in his or her official capacity." (Gov. Code, § 12512.) The District Attorney, on the other hand, is a county officer whose territorial jurisdiction and power is limited accordingly. Though section 17204 confers standing on district attorneys to sue in the name of the people of the State of California, it cannot constitutionally or reasonably be interpreted to grant the District Attorney power to seek and recover restitution and civil penalty relief for violations occurring outside the jurisdiction of the county in which he was elected. A contrary conclusion would permit the District Attorney to usurp the Attorney General's statewide authority and impermissibly bind his sister district attorneys, precluding them from pursuing their own relief. Thus, in the absence of written consent by the Attorney

4

General and other county district attorneys, the District Attorney must confine such monetary recovery to violations occurring within the county he serves.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioners are companies or wholly-owned subsidiaries involved in the manufacture, distribution or sale of pharmaceuticals or generic prescription drugs, including the prescription drug Niaspan. In October 2016, the Orange County District Attorney, representing "the People of the State of California" in association with private counsel, filed a complaint for violations of the UCL, alleging that petitioners either entered into agreements or otherwise engaged in conduct that prevented other generic manufacturers from launching their own Niaspan equivalent, causing purchasers and others in California to overpay for the drug. The District Attorney filed a first amended complaint, the operative pleading, in December 2016. In part, the operative complaint alleges that "[e]ach sale of Niaspan in violation of Section 17200 constitutes a separate violation," and purchasers in California sustained substantial losses in the form of overcharges on each sale based on the petitioners' unlawful and unfair business practices, which violated federal, state, and/or common laws, including federal and state antitrust laws. It alleges that "the violations of California law complained of herein resulted in damages to consumers of Niaspan in California, including in the County of Orange." In addition to an injunction, the complaint seeks an order that petitioners pay restitution of any money acquired through the unlawful and unfair business practices, and civil penalties of up to $2,500 for each violation under sections 17206 and 17206.1.

5

Petitioners thereafter moved to strike from the operative complaint "all claims for restitution and civil penalties based on conduct outside the territorial jurisdiction of Orange County."[2]  Relying on *People v. Hy-Lond Enterprises, Inc.* (1979) 93 Cal.App.3d 734, 751 (*Hy-Lond*) as well as *California v. M & P Investments* (E.D.Cal. 2002) 213 F.Supp.2d 1208 (*M & P Investments*), petitioners argued a district attorney's enforcement authority under the UCL was limited to the geographic boundaries of the county for which the district attorney was elected, but contrary to that restriction, the District Attorney sought to recover for overcharges paid by "California Niaspan users, their insurers, public healthcare providers and other government payors . . . ."  Petitioners sought to strike several words and phrases from the complaint referring to pursuing relief across California.

In opposition, the District Attorney argued *Hy-Lond* was inapposite as it involved a settlement and stipulated injunction that purported to bind the real "client," which was the state Department of Health, and immunize the defendant as to future actions involving future violations of law.  He argued that when statewide business practices are at issue, the California Constitution did not prevent the Legislature from giving district attorneys statewide enforcement authority and the ability to obtain statewide relief, which the UCL's plain language indicated the Legislature had done.  The District Attorney

---

[2]     Petitioners also filed a demurrer based on the statute of limitations.  That demurrer and the trial court's ruling overruling it are not at issue in this proceeding.

argued the California Constitution did not restrict his duties and authority under the UCL to obtain statewide relief.

During arguments on the motion, the trial court stated its view that the appellate court in *Hy-Lond* did not address the Napa County district attorney's ability in that case to recover statewide civil penalties; in its opinion, *Hy-Lond* addressed only whether the district attorney could bind the Attorney General in a settlement relating to misconduct spanning more counties than just Napa County. The court explained that if a settlement occurred in the present case, the Attorney General would be permitted to appear and be heard. The court also questioned *Hy-Lond*'s reliance on *Singh v. Superior Court* (1919) 44 Cal.App. 64 in which the Court of Appeal pointed out a district attorney's powers were "limited territorially to the county for which he has been elected," but rejected an argument that a district attorney was not an executive officer or officer of the state for purposes of a bribery statute and dismissed a writ seeking to enjoin proceedings on an indictment. (*Id*. at pp. 66-68.) The court denied petitioners' motion to strike.

Petitioners sought writ relief by this petition. We issued an order to show cause and stayed further proceedings in the superior court pending further order.

DISCUSSION

I. *District Attorney's Demurrer to Petition*

Preliminarily, we address seriatim the District Attorney's arguments made in a general demurrer to the petition. (Code Civ. Proc., § 1089 [when the court issues an alternative writ, "the party upon whom the writ . . . has been served may make a return by demurrer, verified answer or both"]; see Cal. Rules of Court, rule 8.487(b)(1) ["If the

7

court issues an alternative writ or order to show cause, the respondent or any real party in interest, separately or jointly, may serve and file a return by demurrer, verified answer, or both"]; *Agricultural Labor Relations Board v. Superior Court* (2016) 4 Cal.App.5th 675, 681.) The demurrer admits the facts pleaded in the writ petition. (*Agricultural Labor Relations Board v. Superior Court*, at p. 682.)

A. *Service on Attorney General*

The District Attorney first contends the petition is procedurally defective because petitioners did not provide a proof of service of a copy of the writ petition on the Attorney General as required by section 17209.[3] He points out that if the Attorney General is not properly served and the time for serving the brief has not been extended, the court may not enter judgment, grant relief, or issue an opinion. (§ 17209.)

The District Attorney fails to point out that on September 11, 2017, before we issued the order to show cause in this matter, petitioners submitted their certificate of service on the Attorney General of their petition and letter brief in reply to the District Attorney's informal opposition. The Attorney General thereafter sought leave to file an amicus brief and has filed that brief. In view of these developments, we retain power and

---

[3] Section 17209 provides in part: "If a violation of this chapter is alleged or the application or construction of this chapter is in issue in any proceeding in the Supreme Court of California, a state court of appeal, or the appellate division of a superior court, each person filing any brief or petition with the court in that proceeding shall serve, within three days of filing with the court, a copy of that brief or petition on the Attorney General . . . . No judgment or relief, temporary or permanent, shall be granted or opinion issued until proof of service of the brief or petition on the Attorney General and district attorney is filed with the court."

find good cause to sua sponte retroactively extend the time for providing the notice required under section 17209. (Accord, *Black v. Financial Freedom Senior Funding Corp.* (2001) 92 Cal.App.4th 917, 924, fn. 6; see also *Californians for Population Stabilization v. Hewlett-Packard Co.* (1997) 58 Cal.App.4th 273, 284 [section 17209's requirements are not jurisdictional], overruled on other grounds in *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 175-177.) Because the Attorney General has received adequate notice and is not prejudiced in any way, there is no basis to sustain a demurrer to the petition on this procedural ground.

B. *Advisory Opinion*

The District Attorney next contends the petition seeks an improper advisory opinion on an abstract proposition of law, assertedly because the issue is "not tethered to the facts in this case" or to "any order that is now properly justiciable." The contention is not further explained, and we reject it. Petitioners challenge the trial court's ruling denying their motion to strike allegations seeking to recover restitution and civil penalties for each sale of Niaspan in the State of California, which rejected the argument that the District Attorney was geographically limited to the County of Orange in seeking such relief. The court's ruling presents a concrete legal dispute over the scope of recovery that a district attorney may seek under the UCL, which is properly the subject of a motion to strike. (Accord, *Commodore Home Systems, Inc. v. Superior Court* (1982) 32 Cal.3d 211, 213-215 [considering petition for writ of mandate filed after superior court denied motion to strike portions of complaint, and deciding legal recoverability of punitive damages in a suit for job discrimination under the California Fair Employment and

9

Housing Act]; *Clauson v. Superior Court* (1998) 67 Cal.App.4th 1253, 1255 [deciding whether plaintiffs could seek at the pleading stage punitive damages and statutory penalties for unlawful wiretapping].)  Our review of the legal question presented here is not an abstract proposition, and an early resolution of the issue will streamline both discovery and any trial on the matter.  (Accord, *Smith v. Superior Court* (1992) 10 Cal.App.4th 1033, 1037 [extraordinary relief was warranted where court denied motion to strike emotional distress and punitive damage allegations; "[i]f forced to proceed to trial on the amended complaint as it stands, petitioners will be required to conduct further discovery on plaintiff's emotional distress claim, and trial will be extended by the introduction of evidence on that issue.  . . .  In addition, the ability of a party to recover emotional distress damages in negligence actions involving only economic injury is an issue of great public importance and requires immediate resolution"].)

C.  *Ripeness*

Similarly, the District Attorney contends the petition must be dismissed because the trial court did not rule on the issue presented and thus no ruling is "ripe for appellate review."  Specifically, the District Attorney argues the court "made no ruling with respect to what the permissible amount of penalties should be in this case."  The District Attorney points to the court's remarks during oral argument on the petitioners' demurrer that concerns over damages "are a little premature" and during the motion to strike that there was no reason to reach "[w]hat kind of remedies plaintiff may be entitled to down the line . . . ."

" '[T]he ripeness doctrine is primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy.' " (*Vandermost v. Bowen* (2012) 53 Cal.4th 421, 452.) Here, the cited remarks do not support the District Attorney's assertion that the court did not rule on the issue presented.[4]  By denying petitioners' motion to strike the broad allegations as to violations of the UCL for "purchases of, and reimbursements for, the prescription drug Niaspan *occurring in California*," the court necessarily determined that the District Attorney in its UCL action was permitted to pursue restitution and civil penalties for violations occurring throughout California, including outside the geographical limits of Orange County.  The issues were sufficiently framed in the motion, are definite and concrete, and the court's ruling is ripe for judicial review.

---

[4]     The record shows that when the court stated "we are not worried about damages in a demurrer, so I think your concerns are a little premature," and "[w]hat kind of remedies plaintiff may be entitled to down the line, there's no reason to reach that now," it was referring to petitioners' demurrer on statute of limitations grounds and their arguments as to the continuous accrual doctrine, under which a series of wrongs may be viewed as each triggering its own limitations period.  (See *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1192.)  The other cited remarks occurred when the court informed the parties that if they reached a settlement, the Attorney General "is going to know about it" and "have a voice."  The court remarked:  "It seems to me that you would all be better served if you recognized that and include the AG—If, indeed, we are looking at civil penalties and what you want to do.  But that's kind of a ways down the road."  These remarks in no way suggest the court declined to reach the issue presented by petitioners' motion to strike.

11

D. *Irreparable Harm for Purposes of Writ Relief*

The District Attorney next contends petitioners have not established irreparable harm to support extraordinary writ review of the "amount of penalties to be awarded in this case." (Some capitalization omitted.) We reject the premise of this argument, namely that the petition at hand challenges merely the "amount" or sum of the award, as opposed to the District Attorney's power to collect penalties from sales or reimbursements occurring outside the limits of Orange County. We also reject the District Attorney's argument that because the pleading of civil penalties is legally authorized by the UCL, the remedies are not "irrelevant, false, or improper matter" subject to a motion to strike. The first amended complaint did not simply plead entitlement to civil penalties, a legally proper remedy in the abstract, but specifically sought such penalties for sales, purchases and reimbursements—alleged to constitute violations of "federal, state, statutory and/or common laws"—occurring throughout California. As stated, a motion to strike is proper where petitioners challenge the scope of UCL recovery sought by the District Attorney's pleading.

E. *Important Question of Law*

Finally, the District Attorney argues that this matter does not present, and petitioners have not identified, conflicting lower court decisions or an important issue of law that that should be settled by a ruling on their petition. The District Attorney argues that the proper remedy is "fact specific," and "[s]uch matters cannot be determined in one broad sweeping statement of the law . . . ."

12

The arguments are without merit. We have already determined by issuing an alternative writ that there is no adequate legal remedy in this case. (Accord, *Smith v. Superior Court*, *supra*, 10 Cal.App.4th at p. 1037, citing *Robbins v. Superior Court* (1985) 38 Cal.3d 199, 205.) And this court has granted petitioner's request that we judicially notice the existence of conflicting superior court decisions on the issue. (See *Linda Vista Village San Diego Homeowners Association, Inc. v. Tecolote Investors, LLC* (2015) 234 Cal.App.4th 166, 185 [judicial notice is properly taken of existence of court orders to establish the legal effect of the results reached]; *Shersher v. Superior Court* (2007) 154 Cal.App.4th 1491, 1501, fn. 5.) Whether a district attorney acting in the name of the People of the State of California may obtain restitution and civil penalties for UCL violations occurring outside his or her county is in our view an important legal issue, and one that implicates constitutional principles. (See *Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1273 [general criteria for determining the propriety of an extraordinary writ include that the issue tendered presents a significant and novel constitutional issue, or the party seeking the writ lacks an adequate means by which to attain relief], citing *Britt v. Superior Court* (1978) 20 Cal.3d 844, 851-852 [discovery order compelling disclosure of information as to plaintiffs' and nonparties' private associational activities raised significant and novel constitutional issues of great importance, justifying review by extraordinary writ].)

13

II. *The District Attorney's Authority to Recover Restitution and Civil Penalties Is Limited to Violations Occurring in the County in Which He Was Elected*

A. *Standard of Review*

The issue presented by Petitioners' motion to strike—the scope of the District Attorney's authority to seek restitution and civil penalties under the UCL—is one of law that we review de novo. (Accord, *Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 309 [though a court's ruling on a motion to strike generally is reviewed for abuse of discretion, review is de novo where the issue involves the proper interpretation of a statute and its application to undisputed facts]; see, e.g., *Pitts v. County of Kern* (1998) 17 Cal.4th 344, 345 [whether district attorney acts on behalf of the state or county is a question of law].) We independently determine the proper interpretation of the Constitution and the relevant provisions of statutes including the UCL, and are not bound by the lower court's ruling. (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 933, 934; *Burden v. Snowden* (1992) 2 Cal.4th 556, 562; *Southern Cal. Underground Contractors, Inc. v. City of San Diego* (2003) 108 Cal.App.4th 533, 551 [interpretation and application of a statutory scheme to an undisputed set of facts is a question of law subject to de novo review on appeal].)

In construing a statute or constitutional provision, we give the language used its ordinary meaning, and " '[i]f the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . . " [Citation.] To that end, we generally must 'accord [ ] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose,' and have warned that

14

'[a] construction making some words surplusage is to be avoided.' [Citation.] [¶] But '[t]he words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.' [Citation.] 'Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 357-358.) Our primary task is to identify and effectuate the underlying purpose of the law. (*People v. Garcia* (2017) 2 Cal.5th 792, 805.)

We also consider the doctrine of constitutional avoidance, under which "a statute should not be construed to violate the Constitution ' " 'if any other possible construction remains available.' " ' " (*People v. Garcia*, *supra*, 2 Cal.5th at p. 804.) "The theory underlying the canon rests not only on a preference for avoiding the unnecessary resolution of constitutional questions, but also on the presumption that the Legislature (whose members have sworn to uphold the Constitution) did not 'intend[ ] to infringe constitutionally protected liberties or usurp power constitutionally forbidden it.' " (*Ibid.*) " '[W]hatever the Legislature's intent may have been, "the ultimate constitutional interpretation must rest, of course, with the judiciary." ' " (*City of San Buenaventura v. United Water Conservation District* (2017) 3 Cal.5th 1191, 1209, fn. 6.)

B. *Powers of the Attorney General and District Attorneys*

The California Constitution defines the powers and responsibilities of the executive branch and its principal officers, and appoints the Attorney General as "the chief law officer of the State . . . ." (Cal. Const., art. V, § 13; see *Steen v. Appellate Div.,*

15

*Superior Court* (2014) 59 Cal.4th 1045, 1053.)  The California Supreme Court has summarized the Attorney General's function and powers as follows:  "The Attorney General . . . is the chief law officer of the state (Cal. Const., art. V, § 13).  As such he possesses not only extensive statutory powers but also broad powers derived from the common law relative to the protection of the public interest.  [Citations.]  '[H]e represents the interest of the people in a matter of public concern.'  [Citation.]  Thus, 'in the absence of any legislative restriction, [he] has the power to file any civil action or proceeding directly involving the rights and interests of the state, or which he deems necessary for the enforcement of the laws of the state, the preservation of order, and the protection of public rights and interest.'  [Citation.]  Conversely, he has the duty to defend all cases in which the state . . . is a party.  (Gov. Code, § 12512.)"  (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 14-15, disapproved on other grounds in *Woodland Hills Residents Assn., Inc. v. City Council of Los Angeles* (1979) 23 Cal.3d 917, 944; see also *In re Stier* (2007) 152 Cal.App.4th 63, 73, fn. 10.)  Under the Constitution, the Attorney General has "direct supervision over every district attorney . . . in all matters pertaining to the duties of their respective offices" and has a duty to prosecute any violations of law "[w]henever in [its] opinion . . . any law of the State is not being adequately enforced in any county . . . ."  (Cal. Const., art V, § 13; *People v. Dehle* (2008) 166 Cal.App.4th 1380, 1387.)[5]  In so doing, "the Attorney General shall

---

5       That section of the Constitution also provides that the Attorney General "may require [the district attorney] to make reports concerning the investigation, detection,

16

have all the powers of a district attorney." (*Ibid*.) When exercising such supervision, the Attorney General " 'may, where he deems it necessary, take full charge of any investigation or prosecution of violations of law of which the superior court has jurisdiction.' " (Gov. Code, § 12550; *Steen v. Appellate Div., Superior Court*, 59 Cal.4th at p. 1053.) The Attorney General is authorized by law to " 'conference' with the district attorneys to discuss their duties 'with the view of uniform and adequate enforcement' of state law." (Gov. Code, § 12524; *Pitts v. County of Kern*, *supra*, 17 Cal.4th at p. 358.)

A district attorney, in turn, is a " 'public prosecutor, except as otherwise provided by law,' who . . . 'within his or her discretion shall initiate and conduct on behalf of all people all prosecutions for public offenses' " in the name of the People of the State of California. (*Steen v. Appellate Div., Superior Court*, *supra*, 59 Cal.4th at p. 1053, quoting Gov. Code, §§ 100, subd. (b) ["The style of all process shall be 'The People of the State of California,' and all prosecutions shall be conducted in their name and by their authority"]; 26500; Pen. Code, § 684 [criminal actions are prosecuted in the name of the people of the State of California "as a party" against the person charged with the offense]; *People v. Subramanyan* (2016) 246 Cal.App.4th Supp. 1, 8.) As a matter of state law, a district attorney represents the state when preparing to prosecute and when prosecuting criminal violations of state law. (*Pitts v. County of Kern*, *supra*, 17 Cal.4th at pp. 361-362, 364 [holding for purposes of determining whether a county was liable in a title 42 United States Code section 1983 action]; see *Graham v. Municipal Court* (1981) 123

prosecution, and punishment of any crime in their respective jurisdictions as to the Attorney General may seem advisable." (Cal. Const., art. V, § 13.)

Cal.App.3d 1018, 1022 ["A county district attorney prosecuting a criminal action within a county, acts as a *state* officer, exercising ultimately powers which may not be abridged by a county board of supervisors"].)

A district attorney, however, is designated by both the Constitution (Cal. Const., art. XI, § 1, subd. (b)) and by statute (Gov. Code, § 24000) as a county officer.[6] He or she is elected by the county voters, and the county board of supervisors sets his or her salary; likewise, the county has the authority to supervise the district attorney's conduct and use of public funds. (Cal. Const., art XI, § 1, subd. (b); Gov. Code, §§ 24009, 25300, 25303.) A district attorney must be a registered voter in the county in which he or she is elected. (Gov. Code, § 24001.) Thus, though district attorneys have plenary authority to pursue actions in the criminal arena in the State's name (*People v. Superior Court* (*Solus Industrial Innovations, LLC*) (2014) 224 Cal.App.4th 33, 41, 43 (*Solus Industrial*)), their "authority is territorially limited" to the confines of their county. (*Pitts v. County of Kern*, *supra*, 17 Cal.4th at p. 361; see also *People v. Eubanks* (1996) 14 Cal.4th 580, 589 [each county's district attorney is the public prosecutor vested with power to conduct on the People's behalf "all prosecutions for public offenses within the county"]; *People v. Superior Court* (*Jump*) (1995) 40 Cal.App.4th 9, 13 [district attorney is a "county officer

---

6      Article XI, section 1, subdivision (b) of the California Constitution provides:  "The Legislature shall provide for county powers, an elected county sheriff, an elected district attorney, an elected assessor, and an elected governing body in each county." Government Code section 24000 states in part that "[t]he officers of a county are:  [¶]  (a) A district attorney."  (See also *Harvey v. County of Butte* (1988) 203 Cal.App.3d 714, 720.)

18

who is authorized by statute to prosecute those crimes committed within the geographic confines of his or her county"]; *Hy-Lond*, *supra*, 93 Cal.4th at p. 751; *Singh v. Superior Court* (1919) 44 Cal.App. 64, 65-66 [a district attorney "is a county officer in at least a geographic sense . . . that the exercise of his powers as such is limited territorially to the county for which he [or she] has been elected"].)[7]  The California Supreme Court has held that a district attorney's representation of the state in prosecuting crimes is not inconsistent with the fact that his or her authority is territorially limited; it is in line with an understanding that they are " 'state officials who have been locally placed throughout the State, with an element of control granted to the officials and residents of the county which receives the [district attorney's] services.' "  (*Pitts v. County of Kern*, *supra*, 17 Cal.4th at p. 361; see also *County of Los Angeles v. Superior Court* (1996) 68 Cal.App.4th 1166, 1173.)

The duties of a district attorney can extend beyond those of a public prosecutor (Gov. Code, § 26500) to the prosecution and defense of civil causes of action.  (*County of Sutter v. Board of Administration* (1989) 215 Cal.App.3d 1288, 1293, citing Gov. Code, §§ 26520-26530.)  But with respect to civil actions, a district attorney has no plenary power.  (See *Solus Industrial*, *supra*, 224 Cal.App.4th at p. 41 [district attorney's

---

[7]     Counties of course are "legal subdivisions of the state" (Cal. Const., art. XI, § 1) and their police powers may be enforced only within their territorial limits.  (Cal. Const., art. XI, § 7; see *Candid Enterprises, Inc. v. Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 ["Under the police power granted by the Constitution, counties and cities have plenary authority to govern, subject only to the limitation that they exercise this power within their territorial limits and subordinate to state law"]; *San Diego County Veterinary Medical Assn. v. County of San Diego* (2004) 116 Cal.App.4th 1129, 1134.)

19

authority to act as the prosecutor for all public offenses does not encompass violations of civil penalty statutes as well as criminal ones].)  Rather, it is settled that a "district attorney has no authority to prosecute civil actions absent specific legislative authorization . . . ."  (*People v. Superior Court* (*Humberto S.*) (2008) 43 Cal.4th 737, 753; *People v. McKale* (1979) 25 Cal.3d 626, 633; *Safer v. Superior Court* (1975) 15 Cal.3d 230, 236-237; *Solus Industrial*, at pp. 41, 43; *In re Dennis H.* (2001) 88 Cal.App.4th 94, 100.)  "[T]he Legislature's traditional practice has been to affirmatively specify the circumstances in which a district attorney *can* pursue claims in the civil arena, not the circumstances in which he *cannot*."  (*Solus Industrial*, at p. 42.)  "As the court [in *Safer*] explained, 'the Legislature has manifested its concern that the district attorney exercise the power of his office *only in such civil litigation as that lawmaking body has, after careful consideration, found essential.*  An examination of the types of civil litigation in which the Legislature has countenanced the district attorney's participation reveals both the specificity and the narrow perimeters of these authorizations.' "  (*Solus Industrial*, at p. 41.)

When specifying a county district attorney's duties with respect to civil matters, the Legislature recognizes the aforementioned jurisdictional limitations.  In Government Code section 26507 (entitled "Joint prosecution in other jurisdictions"), the Legislature authorizes a county district attorney to enter into agreements to "act jointly" with other district attorneys "in prosecuting a civil cause of action of benefit to his own county in the court of another jurisdiction" as long as there is an agreement with the district attorney of the other county.  (Gov. Code, § 26507.)  A district attorney of one county

20

may provide legal or investigative services to a district attorney of another county "pertaining to the prosecution of a civil cause of action in the other county," but only "with the concurrence of the district attorney of [the other] county and the boards of supervisors of both affected counties . . . ."  (Gov. Code, § 26508.)

The foregoing constitutional and statutory provisions demonstrate that in civil matters, as in criminal matters, a district attorney lacks authority to function outside his or her county jurisdiction absent the consent of the district attorney of the other county. Even when a district attorney acts in a matter within the jurisdiction of the superior court, he or she is subject to oversight and direct supervision by the Attorney General, the state's chief law enforcement officer obligated to ensure the uniform and adequate enforcement of state law.

C.  *Relevant Provisions of the Unfair Competition Law*

The UCL addresses unfair competition, and "proscrib[es] 'any unlawful' business act or practice . . . ."  (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370; see *McGill v. Citibank N.A.* (2017) 2 Cal.5th 945, 954.)  The law's purpose " 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services' " (*McGill*, at p. 954), and provide an equitable and streamlined procedure by which public prosecutors and private individuals can sue to prevent unfair business practices and restore money or property to victims.  (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1150 (*Korea Supply*).)  Given this objective, remedies in the law are limited; damages cannot be recovered.  (*Id*. at pp. 1144, 1150.)

21

Section 17204 is the UCL's standing provision. (*Korea Supply*, *supra*, 29 Cal.4th at p. 1143 [referring to section 17204 as conferring standing]; *Cruz v. PacificCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 315; *Feitelberg v. Credit Suisse First Boston, LLC* (2005) 134 Cal.App.4th 997, 1011 ["Standing is addressed in section 17204"].) It authorizes actions for relief to be initiated by a public prosecutor, including the Attorney General or, as here, a district attorney. (§ 17204.[8]) A UCL violation may be redressed by the remedies of restitution and injunctive relief, which can be pursued by either a public prosecutor or a private party who has suffered injury in fact, and by civil penalties, which can only be pursued by a public prosecutor. (§§ 17203, 17204, 17206, subd. (a); *State v. Altus Finance, S.A.* (2005) 36 Cal.4th 1284, 1307; *Korea Supply*, *supra*, 29 Cal.4th at p. 1144.) The UCL's civil remedies "were enacted because criminal remedies were too often inadequate to protect the public, especially where corporate defendants were concerned." (*People v. E.W.A.P.* (1980) 106 Cal.App.3d 315, 321.)

Section 17203, authorizing injunctive relief and orders of restitution, reads in part: "Any person who engages, has engaged, or proposes to engage in unfair competition may

---

[8]    Section 17204 provides: "Actions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or a district attorney or by a county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, or by a city attorney of a city having a population in excess of 750,000, or by a city attorney in a city and county or, with the consent of the district attorney, by a city prosecutor in a city having a full-time city prosecutor in the name of the people of the State of California upon their own complaint or upon the complaint of a board, officer, person, corporation, or association, or by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."

be enjoined in any court of competent jurisdiction.  The court may make such orders or judgments, . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."  Restitution is made " ' "in order to deter future violations of the unfair trade practice statute and to foreclose retention by the violator of its ill-gotten gains." ' " (*People ex rel. Harris v. Aguayo* (2017) 11 Cal.App.5th 1150, 1169.)

Section 17206 expressly confers authority on the Attorney General and district attorneys, as well as other local prosecutors under specified circumstances,[9] to bring an action for civil penalties "in the name of the people of the State of California."  The section provides in part:  "(a) Any person who engages, has engaged, or proposes to engage in unfair competition shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General [or] by any district attorney . . . . in any court of competent jurisdiction." (§ 17206, subd. (a).)  Additionally, section 17206 provides:  "If the action is brought by the Attorney General, one-half of the penalty collected shall be paid to the treasurer of the county in which the judgment was entered, and one-half to the General Fund.  If the action is brought by a district attorney or county counsel, the penalty collected shall be paid to the treasurer of the county in which the judgment was entered."  (§ 17206, subd.

---

9    These other local prosecutors are the same as specified in section 17204. (§ 17206, subd. (a); see footnote 8, *ante*.)

23

(c).)  That section requires that these penalty "funds shall be for the exclusive use by the Attorney General, the district attorney, [and other public officials] for the enforcement of consumer protection laws.' "  (*Ibid.*; *State v. Altus Finance, S.A.*, *supra*, 36 Cal.4th at p. 1307.)

An action seeking injunctive relief and civil penalties filed by a public prosecutor on behalf of the People is not primarily concerned with restoring property or benefitting private parties; it is fundamentally a law enforcement action with a public, penal objective.  (*State v. Altus Finance, S.A.*, *supra*, 36 Cal.4th at p. 1308; *People v. Pacific Land Research Co.* (1977) 20 Cal.3d 10, 17 [action seeking civil penalties under the UCL "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties"]; accord, *People ex rel. Harris v. Aguayo*, *supra*, 11 Cal.App.5th at p. 1159.)  Civil penalties paid to the government " 'are designed to penalize a defendant for past illegal conduct.' "  (*State v. Altus Finance, S.A.*, at p. 1308; *People v. Pacific Land Research Co.*, at p. 17.)  Likewise, in an action filed by the People "[r]estitution is not intended to benefit the [recipient] by the return of money, but instead is designed to penalize a defendant for past unlawful conduct and thereby deter future violations."  (*People v. Toomey* (1984) 157 Cal.App.3d 1, 26, citing *Pacific Land Research Co.*, at p. 17.)  "While restitution would benefit the [recipient] by the return of the money illegally obtained, such repayment is not the primary object of the suit, as it is in most private class actions." (*Pacific Land Research Co.*, at p. 17; *People v. Superior Court* (*Jayhill*) (1973) 9 Cal.3d 283, 286 [restitution is only ancillary to the primary remedies sought for the public benefit].)

D. *Analysis*

Invoking the limitations on district attorneys' ability to bring civil actions as well as the territorial limits of their jurisdiction, petitioners argue absent a specific statutory grant of extraterritorial authority, a district attorney of a single county may not unilaterally seek civil relief under the UCL for conduct occurring outside his or her county. They point out that neither the Government Code nor section 17204 of the UCL authorizes recovery of statewide relief or civil penalties by a county district attorney. Petitioners, along with the Attorney General, the California District Attorneys Association, and the Chambers of Commerce as amici curiae, assert *Hy-Lond*, *supra*, 93 Cal.App.4th 734 addresses the reach of local prosecutors' enforcement authority and specifically prohibits " 'the right of the district attorney to surrender the powers of the Attorney General and his fellow district attorneys to commence, when appropriate, actions in other counties under [the UCL].' "[10]

---

[10] Petitioners also rely on the federal district court's decision in *M & P Investments*, *supra*, 213 F.Supp.2d 1208, in which the court, citing *Hy-Lond*, stated "a city attorney's authority is limited to the geographical boundaries of the constituency which he or she represents." (*M & P Investments*, at p. 1216, citing *City of Oakland v. Brock* (1937) 8 Cal.2d 639, 641.) In *M & P Investments*, the district court considered a city attorney's authority to abate a public nuisance under Code of Civil Procedure section 731 "in the name of the people of the State of California" and held the statute did not elevate him to the status of a State agent with full authority commensurate with such a position. (*Id*. at p. 1213 [citing *People v. City of Los Angeles* (1958) 160 Cal.App.2d 494, 500 for the proposition that " 'the only authority given to the city council of Manhattan Beach or its city attorney by [Code of Civil Procedure] section 731 . . . is to bring an action to abate a public nuisance existing within that city' "].) But the statute at issue expressly limited the authority to bring a civil action under its provision to a " 'district attorney of any county *in which such nuisance exists . . . .*' " (*M & P Investments*, at p. 1212, fn. 11, quoting

25

In *Hy-Lond*, the Napa County District Attorney sued a nursing facility operator for an injunction, civil penalties, and other relief under the UCL and false advertising laws. (*Hy-Lond*, *supra*, 93 Cal.App.3d at p. 739.) The district attorney entered into a stipulated judgment with the operator that covered 18 facilities located in 12 counties, in which the defendant agreed to operate its facilities in a legal manner and pay civil penalties of $2,500 each on 16 of 87 violations. (*Hy-Lond*, at pp. 748-749.) The judgment absolved the defendant for past wrongdoings and immunized it from future unfair competition lawsuits with respect to future alleged violations of the law and regulations. (*Id*. at p. 749.) It also delegated supervision of any further proceeding to enforce the judgment to the Napa County District Attorney and provided that the Napa County District Attorney was "designated as the exclusive governmental agency that may enforce the provisions of this injunction." (*Ibid*.)

The Attorney General (on behalf of himself and other district attorneys in other counties where the defendant had facilities) and the California Department of Health (the department) intervened to set aside the judgment. (*Hy-Lond*, *supra*, 93 Cal.App.3d at pp. 739, 743.) After the court declined to do so, they then appealed, contending the judgment was void as it precluded them from performing their statutory duties. (*Id*. at p. 739.) On appeal, the defendant took the position that the Attorney General and department lacked standing to bring the challenge, but were barred in any event by the judgment because the district attorney had statutory authority to enter into it. (*Id*. at

Code Civ. Proc, § 731.) We need not rely on *M & P Investments* to reach our conclusions.

26

p. 739.)  Pointing out the Attorney General's motion challenged the district attorney's authority to stipulate away the rights and duties reserved to the Attorney General and the department (*id*. at p. 745), the Court of Appeal stated it was to decide whether section 17204's grant of authority on the district attorney embraced the right to restrain the powers of other public officials and agencies.  (*Id*. at p. 752.)

The *Hy-Lond* court held it did not; the district attorney had no right "to surrender the powers of the Attorney General and his fellow district attorneys to commence, when appropriate, actions in other counties" under the UCL (the former provisions of 17200 to 17204, 17206, and 17207).  (*Hy-Lond*, *supra*, 93 Cal.App.4th at p. 753.)  The court rejected the notion that the authority to restrain the Attorney General and other public agencies was conferred by the mere fact the district attorney was authorized to prosecute state law violations on behalf of the people:  Government Code section 100, providing that "[t]he style of all process shall be 'The People of the State of California,' " and that all prosecutions shall be conducted in their name, did not "tell us who is authorized to represent the [People] in any particular action, or the limits to which such authority extends." (*Hy-Lond*, *supra*, 93 Cal.App.3d at p. 751, citing Gov. Code, §§ 100, 26500.)

*Hy-Lond* explained that though "in conducting the prosecution of violations of state law on behalf of the people, the district attorney is acting as an agent of the state," it only acted as such an agent "within the territorial limits of the county for which he was elected." (*Hy-Lond*, *supra*, 93 Cal.App.3d at p. 751, citing *Singh v. Superior Court*, *supra*, 44 Cal.App. at p. 66.)  Thus, it observed, "No one could reasonably contend that in return for a plea of guilty to an offense committed in one county, the district attorney of

27

that county could give an accused immunity from prosecution for a series of similar offenses committed in other counties." (*Hy-Lond*, at p. 751.) The court rejected the defendant's assertion that the state was a single entity with power to stipulate and compromise actions, such that litigants should be able to negotiate with it "without the fear that another agency or other state entity might overturn any agreement reached." (*Id.* at p. 752.) While the court found some merit to that proposition in the abstract, it held it did not prevail when the litigant sought to secure concessions that would limit the powers of other state agents or entities that he or she knew were involved and were not parties to the action. (*Id.* at p. 752.) In the Court of Appeal's view, the trial court and all concerned had notice of the scope of the district attorney's legally defined powers, and it erred by declining to set aside the judgment. (*Id.* at p. 753.) In reaching its holding, *Hy-Lond* acknowledged the appellant's argument that "the rule suggested by respondent would put the initiating district attorney in the position of bargaining for the recovery of civil penalties that would flow into his county's coffers, at the expense of surrendering the rights and duties of the state to control the respondent's activities generally through the powers of the Attorney General (other district attorneys) and the Department." (*Hy-Lond, supra*, 93 Cal.App.4th at p. 753.) The court did not further examine the point, but was prompted by it to point out that the exercise of a district attorney's powers "are limited by the recognition of a possible conflict of interest." (*Id.* at pp. 753-754.)

We have no difficulty applying *Hy-Lond*'s principles to bar a district attorney's unilateral effort to seek restitution and civil penalties for UCL violations occurring outside his or her own county jurisdiction. To be sure, the UCL's scope is broad; it

28

reaches any unlawful business act or practice committed in California.  (See § 17200

["As used in this chapter, unfair competition shall mean and include any unlawful, unfair

or fraudulent business act or practice"]; *People ex rel. Harris v. Pac Anchor Transp., Inc.*

(2014) 59 Cal.4th 772, 783; *Sullivan v. Oracle Corp.* (2011) 51 Cal.4th 1191, 1208.)

And the law, as stated above, expressly confers standing on district attorneys to bring

civil law enforcement actions in the People's name when prosecuting UCL violations.

But that grant of standing, as in criminal actions, cannot reasonably or constitutionally be

interpreted as conferring statewide authority or jurisdiction to recover such monetary

remedies beyond the county the district attorney serves, or restricting the Attorney

General's constitutional power to obtain relief on behalf of the entire state.  (Accord,

*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 336 [refusing to "conflate[] the

issue of standing with the issue of the remedies to which a party may be entitled"].)

Thus, the law does not grant the District Attorney in this case authority to unilaterally

pursue statewide monetary relief in the name of the state, as such a grant would permit

the Legislature to usurp the Attorney General's constitutional authority as the state's chief

law officer, and allow the district attorney of one county to impermissibly compromise

and bind the Attorney General and the district attorneys of other counties.  Under a

contrary interpretation, a judgment in this case would bind the state under principles of

res judicata and collateral estoppel, and prevent the Attorney General and other district

29

attorneys from seeking further relief for violations occurring in their own communities.[11]

Both the constitution and *Hy-Lond* countenance this result.

We therefore construe the authority conferred on the District Attorney by the UCL as subject to the constitutional and statutory jurisdictional limitations described above. (See, e.g., *Steen v. Appellate Div., Superior Court*, *supra*, 59 Cal.4th at pp. 1053-1054 [interpreting statute governing conduct of judicial branch employee raising constitutional separation of powers issues to avoid defeating or impairing function of executive branch; "[w]hen an ambiguous statute raises serious constitutional questions, our task is not to resolve such questions in the abstract but rather to ' " 'endeavor to construe the statute in a manner which *avoids* any doubt concerning its validity' " ' "]; *Tex-Cal Land Management, Inc. v. Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 346 ["[t]he

---

11     "Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.)  "Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit.  [Citations.]  If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)  Accepting the District Attorney's argument that it possesses statewide jurisdiction in UCL actions, a final judgment for restitution and civil penalties on behalf of the People for statewide violations would preclude the Attorney General and sister district attorneys, because in all such cases the state is the party.  (§ 17204; see, e.g., *Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053 [settlement of a prior action by the attorney general and other state agencies barred under the doctrine of res judicata another representative suit by a public interest group, who sued " 'on behalf of the public' "]; *Hy-Lond*, *supra*, 93 Cal.App.3d at p. 751 [ in prosecuting violations of state law on behalf of the People, the "district attorney acts for the state within the territorial limits of the county for which he was elected"]; *Pitts v. County of Kern*, *supra*, 17 Cal.4th at p. 361 [district attorneys are often considered state officials despite limited jurisdictions].)

Legislature may not give to courts a jurisdiction beyond that conferred or authorized by the Constitution"]; *Gananian v. Wagstaffe* (2011) 199 Cal.App.4th 1532, 1540-1543 [construing Education Code so as not to infringe on district attorney's prosecutorial discretion, an executive branch function rooted in the separation of powers].)  As stated, in construing the UCL's provisions, we must preserve its constitutional validity, and thus we "presume . . . the Legislature understands the constitutional limits on its power and intends that legislation respects those limits."  (*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 129, superseded by statute on other grounds as stated in *Arias v. Superior Court* (2009) 46 Cal.4th 969, 982-983; *Gananian v. Wagstaffe*, at p. 1543.) Reviewing courts "will not impute to the Legislature an intent 'to overthrow long-established principles of law,' . . . 'unless such intention is made clearly to appear either by express declaration or by necessary implication.' "  (*Gananian*, at p. 1543.)

The District Attorney argues *Hy-Lond* is inapposite because it involves the enforceability of a settlement and judgment in which the defendant received immunity and restrictions were placed on the powers of the Department of Health relating to nursing homes; he maintains the decision is limited to its unusual facts and cannot impede the efforts of district attorneys in protecting California consumers.[12]  The District Attorney suggests another authority, *People v. Mendez* (1991) 234 Cal.App.3d

---

[12]    Amici city attorneys likewise argue that *Hy-Lond* is a narrow decision that does not bar a district attorney from seeking statewide remedies.  They, and apparently our dissenting colleague, characterize its discussion of a district attorney's geographic limitations as dicta, and any extension to actions for monetary relief as a distortion of its ruling.  We disagree for the reasons stated in this opinion.

31

1773, more directly holds that a district attorney has power to bind the state contrary to *Hy-Lond*, as a UCL treatise author has suggested. In *Mendez*, the Court of Appeal declined to estop the Attorney General from challenging a stipulation in a criminal action entered into by a district attorney, who was under a significant misapprehension of the law. (*Id*. at p. 1784; see *People v. Ford* (2015) 61 Cal.4th 282, 289.) In so holding, *Mendez* recognized that the State would ordinarily be bound by the stipulation, since a criminal action is prosecuted in the name of the People of the State of California as a party. (*Id*. at p. 1783.) But the issue in that case was estoppel and the court declined to apply the doctrine; to the extent *Mendez* says anything about a district attorney's power to bind the state, it stands for the unremarkable proposition that in criminal cases, the state is the party regardless of whether it is represented by the district attorney or the Attorney General. It says nothing about a district attorney's authority—extraterritorially or otherwise—to bring civil actions generally or under the UCL specifically and does not impact our reading of *Hy-Lond*.

Even absent *Hy-Lond*, a sound interpretation of the UCL defeats the District Attorney's arguments. Contrary to the assertions of the District Attorney and amici city attorneys, the text of the UCL provides no basis to conclude the Legislature intended to grant local prosecutors extraterritorial jurisdiction to recover statewide monetary relief. The District Attorney points to the UCL's silence on the issue; he asserts the UCL's text contains no geographical limitation on the remedies district attorneys may recover, nor is

32

such a limitation expressed in its purpose or legislative history.[13] He argues the UCL equates district attorneys' authority with that of the Attorney General, and we must abide by the statute's plain language and not read limitations into it. The District Attorney asserts the UCL provides for statewide injunctions that may be enforced on a statewide basis.[14] Petitioners and amici Chambers of Commerce, on the other hand, argue the UCL's silence as to the scope of a district attorney's authority in this regard means the district attorney has none. We agree section 17204 does not explicitly extend the limits of district attorneys' territorial jurisdiction, or vest district attorneys with authority to recover restitution or civil penalties for violations beyond the geographic scope of their counties. The statute must do so specifically, to support the District Attorney's position. (*Safer v. Superior Court*, *supra*, 15 Cal.3d at pp. 236-237; *People v. Superior Court* (*Humberto S.*), *supra*, 43 Cal.4th at p. 753.)[15]

---

[13]   Despite this argument, the District Attorney has neither summarized nor provided any legislative history on the issue. Nor have petitioners presented us with any legislative history materials.

[14]   Whether the UCL empowers a district attorney to obtain statewide injunctive relief was not a subject of petitioners' motion to strike below, and it is not before us. We do not address the issue of injunctive relief or the attendant civil penalties authorized in section 17207 for violations of UCL injunctions.

[15]   The District Attorney further points out that the UCL does not define a "violation" for purposes of assessing civil penalties, and it argues the question is not determined by a "strict 'geographic boundaries' test." It is established that the question of what constitutes a violation, as well as the amount of penalties, is left for the court to decide in its discretion on a case-by-case basis. (*People ex rel. Kennedy v. Beaumont Investment, Ltd.* (2003) 111 Cal.App.4th 102, 127-128, quoting *People v. Superior Court* (*Jayhill*), *supra*, 9 Cal.3d at p. 288; see *People ex rel. Harris v. Sarpas* (2014) 225 Cal.App.4th 1539, 1560.) In this case, the nature and scope of a violation, and whether such violations have

33

Additionally, the UCL's structure reflects the Legislature's understanding of public prosecutors' jurisdictional limitations as to monetary relief. As the Attorney General points out, section 17206, subdivision (c), which distributes penalties depending on which agency obtains them, requires the Attorney General's Office to deposit half of its collected civil penalties into the state's general fund, with the other half going to the county in which the judgment is entered, while district attorneys must deposit collected penalties only to the treasurer of their respective counties. According to the Attorney General, in drafting this provision, the Legislature contemplated that only the Attorney General may seek redress for statewide violations, and local prosecutors, absent a joint prosecution agreement, may address only misconduct occurring within their city or county. We agree that by structuring the statute so that penalties collected by a district attorney go only to the treasurer of the county in which the judgment was entered, the Legislature has manifested its understanding that a district attorney's redress is restricted to local violations, benefitting the electorate to which the district attorney is accountable. There is no indication the Legislature sought to write the UCL so broadly as to permit county district attorneys to collect penalties from violations occurring outside their county boundaries for their own county treasurers. To the contrary, it is reasonable to conclude the Legislature intended to prevent local prosecutors from "step[ping] outside [their] jurisdictional boundaries" (*State ex rel. Harris v. PricewaterhouseCoopers,*

---

occurred within the territorial jurisdiction of Orange County, are matters for the trial court to decide in the first instance. (Accord, *People v. Superior Court of Los Angeles County* (*Cahuenga's The Spot*), *supra*, 234 Cal.App.4th at p. 1384.)

34

*LLP* (2006) 39 Cal.4th 1220, 1231) to recover extraterritorial civil penalties, which would "raise[] concerns that scarce government resources might be wasted on duplicative, overlapping, and competitive investigations of possible [violations]." (*Ibid.* [explaining why the Legislature reasonably could conclude public entities—the district attorney and city attorney representing the City and County of San Francisco—may not bring qui tam actions on behalf of other units of government under the California False Claims Act].)

We reject the District Attorney's assertion that he has a broad "legislative mandate" to seek restitution on behalf of individuals throughout the state. The District Attorney cites *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.* (2002) 104 Cal.App.4th 508, 531, and the language of section 17203, giving courts discretion to restore money or property acquired by means of unfair competition to "any person . . . ." *Lockyer* was an action brought by the Attorney General against an insurance company, in which the trial court ordered the defendant to make an offer of classwide or "across-the-board" restitution to each nonsettling California consumer who had purchased a policy from the defendant under certain circumstances. (*Id*. at p. 531.) The Court of Appeal upheld the restitution order against claims it was excessive, unfair, unnecessary, and unsupported by proof that all consumers were deprived of money or property. (*Id*. at pp. 531-532.) *Lockyer* and the other authorities relied upon by the District Attorney, which also involve actions brought either solely by the Attorney General (*People v. Superior Court (Jayhill)*, *supra*, 9 Cal.3d at p. 286) or by the Attorney General in conjunction with a county district attorney (*People v. Pacific Land Research Co.*, *supra*, 20 Cal.3d 10, 14), say nothing about the extent of a local prosecutor's enforcement authority, and none of

35

the cases suggest that a local district attorney's authority is coextensive with that of the Attorney General, or that if the district attorney alone had brought the action, the same scope of restitution would be proper.

Nor can we draw a different conclusion, as the amici city attorneys would have us do, from the Legislature's use of limiting language in other statutes such as Code of Civil Procedure section 731 allowing a district attorney, county counsel or city attorney to abate nuisances "of any county in which the nuisance exists" and giving those officers a "concurrent right" to bring such an action. The constitutional limitations need not be explicitly set forth, as evidenced by Government Code section 26500, which authorizes a district attorney to "initiate and conduct on behalf of the people *all* prosecutions for public offenses" (italics added) but nevertheless does not permit a district attorney to prosecute crimes outside his or her county. (See *People v. Eubanks*, *supra*, 14 Cal.4th at p. 589, citing Gov. Code, § 26500.) And, as the Chambers amici point out, the *expression unius est exclusion alterius* inference does not apply where, as here, there is no listing of items within one statute so as to permit an inference that the Legislature deliberately excluded items not mentioned. (*Howard Jarvis Taxpayers Assn. v. Padilla* (2016) 62 Cal.4th 486, 515 [pointing out the canon generally applies to a specific statute that contains a listing of items and may not apply to " 'an entire code' " or "widely separated" statutes].)

We cannot agree with the District Attorney and other amici that the UCL's policy objectives counter the result we reach. The District Attorney argues that to prevent a district attorney from seeking statewide relief "would arbitrarily shield Defendants from

36

liability for the full extent of their illegal misconduct and/or require district attorney suits in all California counties in order to secure any form of statewide relief . . . ." He asserts that private parties may secure statewide relief, and there is "no logical reason" why public prosecutors may not, since prosecutors do not stand in the victims' shoes and relief is awarded to consumers, not to the prosecutor. But a private plaintiff suing under the UCL is not entitled to seek civil penalties, and after Proposition 64, such a plaintiff must not only show he or she has " 'suffered injury in fact and has lost money or property as a result of' " the wrongful acts, but also meet class action requirements in order to bring a representative action. (*Arias v. Superior Court*, *supra*, 46 Cal.4th at pp. 978, 980.) We see nothing incongruous in the distinction. Contrary to the suggestion of the Consumer Attorneys nothing in our decision changes the fact that a district attorney's UCL action is brought on the state's behalf to enforce its police or regulatory power. And the District Attorney is free to enter into agreements with the Attorney General or sister district attorneys to obtain a delegation of authority, or engage in joint prosecutions, where the District Attorney believes there is public benefit to a multi-jurisdictional action.[16] (Cf.

---

[16] The California District Attorneys Association points out there are already protective mechanisms in place for statewide UCL enforcement, including multi-office joint investigations, and multi-agency prosecutions. Even if such matters were judicially noticeable, it does not ask this court to take judicial notice of any such agreements or their existence. Our dissenting colleague thus relies on matters outside the record to dispute the risk that the District Attorney's action could compromise other district attorneys or the Attorney General. (*State Compensation Ins. Fund v. WallDesign, Inc.* (2011) 199 Cal.App.4th 1525, 1528, fn. 1 ["if [a fact] is not in the record, it did not happen"]; see also *In re Valerie A.* (2007) 152 Cal.App.4th 987, 1002-1003; *In re Marriage of Wilcox* (2004) 124 Cal.App.4th 492, 498-499.)

37

*California Air Resources Board v. Hart* (1993) 21 Cal.App.4th 289, 298 [Attorney General's written consent constituted a proper delegation to California Air Resources Board to prosecute a violation "[g]iven the broad powers the Attorney General enjoys derived from the Constitution and the common law and in an absence of any 'legislative restriction' "].)

Finally, the construction urged by the District Attorney would incentivize public prosecutors, acting in their respective county's financial self-interest, to withhold pertinent information from their sister agencies as to the scope of violations, then "race[] [their colleagues] to the courthouse" (*State ex rel. Harris v. PricewaterhouseCoopers, LLP*, *supra*, 39 Cal.4th at p. 1232) in hopes of obtaining all of the civil penalties that would otherwise be deposited in those other county treasuries. The Legislature reasonably could decide to avoid such a scheme, and there is no indication it intended this result.

Our foregoing conclusions are not broad policy pronouncements; we simply interpret the UCL in the light of constitutional and statutory jurisdictional limitations so as to avoid doubts concerning the UCL's validity.

DISPOSITION

Let a writ issue directing the respondent court to vacate its order denying the motion to strike of petitioners Abbott Laboratories, AbbVie Inc., Teva Pharmaceuticals USA, Inc., Barr Pharmaceuticals, Inc., Duramed Pharmaceuticals, Inc. and Duramed Pharmaceuticals Sales Corp., and to enter a new and different order striking the allegations by which the Orange County District Attorney seeks statewide monetary relief under the UCL.  The stay issued will be vacated when the opinion is final as to this court.


O'ROURKE, J.

I CONCUR:



HUFFMAN, Acting P. J.



39

J. DATO, dissenting.

One needn't have been a justice of the Court of Appeal for long—and I have not—to appreciate the prudential institutional limitations on an intermediate appellate court. Our primary role is to review final decisions of the superior court for prejudicial error. We generally avoid broad legal policy pronouncements, leaving that to the Supreme Court and the Legislature. Sometimes policy considerations can play an important part in our decisions, but even then we take pains to assure that the policy questions are squarely presented by the facts of the case and are necessary to the decision we are required to render.

I believe the majority's decision to issue writ relief in this case violates each of these salutary guidelines. The majority then compound these judgmental errors by deciding the ill-considered legal issue incorrectly in a manner that will materially impair the interests of California consumers by fundamentally altering the structure of consumer protection laws in this state. For these reasons, I respectfully dissent.

A

Let's start with what is really going on here. As is expressly authorized by statute (Bus. & Prof. Code, § 17204[1]), the Orange County District Attorney has charged defendant pharmaceutical manufacturers with engaging in a statewide unfair business practice in violation of the Unfair Competition Law. (UCL;§ 17200 et seq.) This statewide practice has allegedly harmed consumers in Orange County and throughout California in a similar fashion. The parties agree that should the court ultimately find the allegations of the complaint have been proved, it has the authority to issue statewide injunctive relief. But for a defendant in a state the size of California, a law enforcement action alleging a statewide unlawful business practice and seeking monetary relief creates, at least potentially, a substantial economic exposure. To the extent law enforcement can be Balkanized and monetary relief limited to local jurisdictions—especially early in the litigation—a defendant's "management" of the exposure is greatly facilitated. It is hardly surprising, then, that defendants in this case sought to craft a motion to "strike claims for restitution and civil penalties to the extent that those are not limited to Orange County."

But there is an immediate problem with use of the motion-to-strike mechanism, for nowhere in the motion do defendants identify any language they seek to excise from the complaint that specifically seeks restitution or civil penalties for acts and practices

---

[1] Statutory references are to the Business and Professions Code unless otherwise specified.

2

that occurred entirely outside Orange County.  Tellingly, the motion to strike nowhere references the complaint's prayer for relief, which simply requests "restitution of any money acquired by Defendants' unlawful and unfair business practices," as well as "civil penalties for each act of unfair and unlawful competition."[2]  Instead, defendants' motion sought to strike all references in the complaint to "California" users of defendants' products and/or events that occurred "in California."  But these descriptive statements are plainly relevant to the request for statewide injunctive relief.  If for no other reason, this alone justifies the superior court's decision to deny the motion to strike.[3]

Even if the complaint were otherwise, what the District Attorney requests in terms of civil penalties and restitution is largely irrelevant, for it is the *court* that ultimately decides the proper scope of monetary relief.  It is well settled that the court can award restitution even in the absence of such a request by the public prosecutor.  (*People v. Pacific Land Research Co.* (1977) 20 Cal.3d 10, 19 [Even "if the People had not sought restitution … the trial court could have ordered restitution on its own motion at the conclusion of the action on the merits."].)  Why, then, do we reach out at the pleading stage to entertain a writ petition as to a purported request for relief that is unnecessary to the complaint?

---

[2]     The majority assert that the District Attorney's complaint "specifically sought [civil] penalties for sales occurring throughout California" (maj. opn., *ante*, at p. 12), but nowhere specify where in the complaint they find this "specific" request.

[3]     Significantly, although it takes no formal position on defendants' motion to strike, the Attorney General's amicus brief agrees that allegations in the complaint regarding defendants' statewide misconduct may be entirely proper.

Nor did the thoughtful trial judge make any overly broad or unnecessary pronouncements that require correction. Contrary to the majority's assertion, she never specifically ruled that the District Attorney *could* recover restitution or civil penalties for acts that took place entirely outside Orange County. She simply denied the motion and ordered defendants to answer the complaint. Indeed, responding to defense counsel's comment during oral argument about the supposed importance of determining "what damages are at issue in the case", the judge characterized those concerns as "a little premature."[4] Later she acknowledged that issues of monetary relief would be addressed, if necessary, in the future: "[I]f . . . we are looking at civil penalties . . . , that's kind of aways [*sic*] down the road."[5]

"Aways [*sic*] down the road," if I may be so bold to suggest, would be the proper time to address the proper scope of monetary relief in this case. Specifically, if and when the trial court decides to award restitution to consumers outside of Orange County or civil penalties based entirely on acts occurring in other parts of the state, that will be the time

---

[4]     The fact that this comment was made in the context of argument on the demurrer rather than the motion to strike (maj. opn., *ante*, at p. 11, fn. 4) hardly changes the substance of the statement. The court was clearly stating that questions regarding the scope of monetary relief would be addressed at a later date, not now.

[5]     The majority opinion inexplicably concludes that this statement "in no way suggest[s] the court declined to reach the issue presented by petitioners' motion to strike." (Maj. opn., *ante*, at p. 11, fn. 4.) I see no way to read the statement *other than* as indicating the court was not ruling on the proper scope of monetary relief. And even assuming the statement was in some way ambiguous, why would we reach out at the pleading stage to issue an extraordinary writ correcting an implication that might or might not have been intended by the trial judge?

when this issue is squarely presented.  At the outset of the case—when the issue is *not* raised by the pleadings and was *not* decided by the trial court—is indisputably *not* the proper time.

B

It is well settled that an appellate court will review rulings on pleadings by writ only "rarely" (*Taylor v. Superior Court* (1979) 24 Cal.3d 890, 894) and "with extreme reluctance" (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 851).  While "writs are occasionally used to provide expedited interlocutory review of pleading issues, some *extraordinary reason* for this kind of priority treatment must appear."  (*Burrus v. Municipal Court* (1973) 36 Cal.App.3d 233, 236, italics added.)  These words of caution are particularly applicable to a motion to strike that does not challenge the plaintiff's ability to plead a valid claim, but merely seeks to edit the language of the complaint in a manner that better suits the defendants' tactical purposes.  Neither defendants nor the majority offer anything approaching an "extraordinary reason" to justify this court's decision to intervene at the pleading stage.

The propriety of extraordinary writ review aside, the decision to prematurely intervene in this case has unnecessarily placed this court in the middle of a jurisdictional turf spat between public prosecutors.  In doing so the majority attempt to construct a solution in search of a problem.  The alleged "problem" here is an overzealous district attorney who seeks to recover (1) restitution on behalf of residents of other counties, and (2) civil penalties based on business practices that have no connection to the district attorney's local jurisdiction.  Apparently, this bothers the Attorney General, who wishes

5

to limit and control all litigation involving statewide unlawful business practices, and perhaps other district attorneys in other counties, who may view the actions of the Orange County District Attorney as "poaching" on their ability to recover civil penalties that would otherwise flow into their own county's treasury.

Business and Professions Code section 17204 broadly permits UCL enforcement actions to be "prosecuted . . . by the Attorney General or a district attorney . . . ." Either way, the action is pursued "in the name of the people of the State of California," just as in criminal cases. (§ 17204.) Section 17203 permits the court, ancillary to its injunctive power, "to restore to *any person in interest* any money or property, real or personal, which may have been acquired by means of" the unlawful or unfair practice. (§17203, italics added.) Section 17206 similarly authorizes the court to award a civil penalty for each UCL violation, "recover[able] in a civil action brought . . . by the Attorney General [or] by any district attorney . . . ." (§17206, subd. (a).) Nothing in any of these statutes limits a county district attorney to prosecuting UCL actions on behalf of citizens of in that particular county. Nor does anything in the UCL restrict a district attorney to recovering restitution on behalf of only county residents.

As justification for reaching out at the pleading stage to prematurely decide a major public policy issue not squarely presented or addressed by the trial court, the majority allude to vague notions of interference with the Attorney General's constitutional authority. They suggest that if a local district attorney can seek restitution on behalf of residents of other counties, or civil penalties attributable to violations in other counties, this would allow the district attorney "to impermissibly compromise and

6

bind the Attorney General and the district attorneys of other counties," preventing them "from seeking further relief for violations occurring in their own communities." (Maj. opn., *ante*, at p. 30.) They then purport to interpret the relevant sections of the UCL to avoid a constitutional issue. (Maj. opn., *ante*, at p. 31.) Respectfully, the majority rely on a phantom constitutional concern to craft a cure that is worse than even the perceived disease.

The UCL is an exceedingly broad remedial statute designed to encourage multiple avenues of enforcement. (See *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949–950.) Indeed, a district attorney can prosecute a UCL claim based even on alleged violations of a statute that provides a different government agency with the sole authority to bring enforcement actions. (*People v. McKale* (1979) 25 Cal.3d 626, 632–633.) And as the majority recognize, "the civil remedies of the [UCL] were enacted because criminal remedies were too often inadequate to protect the public, especially where corporate defendants were concerned." (*People v. E.W.A.P. Inc.* (1980) 106 Cal.App.3d 315, 321.) Pursuing litigation against corporate defendants is expensive, and the Legislature was doubtless aware that both financial and political considerations may sometimes discourage a public prosecutor from undertaking such a case. Consistent with the UCL's broad remedial purposes and the perceived need for vigorous enforcement, there is nothing unconstitutional about the Legislature's decision to permit and encourage multiple public prosecutors with overlapping lines of authority on the theory that more enforcement in this context is better than less.

Moreover, the concern about a local district attorney binding other prosecutors to an improper or inadequate settlement is as fanciful as it is premature. Where, as here, a district attorney brings a UCL enforcement action alleging a statewide unlawful business practice, the Attorney General as the state's chief law enforcement officer always has the authority to intervene and take over the case. As a prominent treatise explains:

> [T]he Attorney General and the 58 district attorney offices have entered into an arrangement to coordinate the filing of § 17200 actions. Every §§ 17200/17500 investigation must be logged onto the computer database under the name of the prospective defendant. That puts other DA offices and the AG on notice of the investigation, and gives the AG the opportunity to intervene, assume jurisdiction, and take control of the investigation and proceeding where the matter is deemed sufficiently important to warrant it, or where there appears to be a conflict among offices. (Stern, Cal. Practice Guide: Business & Professions Code Section 17200 Practice (The Rutter Group 2018) ¶ 9:6.)

Accordingly, there is no practical risk that a local district attorney will "compromise and bind" the Attorney General or district attorneys from other counties. Even if the Attorney General does not elect to formally intervene at the outset and take over a case, it can monitor and take appropriate action if and when the prosecuting district attorney proposes to settle.[6] Similarly district attorneys in other affected counties could consult with the Attorney General or ask the court to be heard as to any eventual settlement.

---

[6] The trial judge in this case was particularly sensitive to this issue. She told defense counsel, "If you reach a settlement with the District Attorney . . . and if the [Attorney General] comes in and says I want to be heard about this, you bet I'm going to let them be heard on this. . . ."

8

The majority's heavy reliance on *People v. Hy-Lond Enterprises, Inc.* (1979) 93 Cal.App.3d 734 (*Hy-Lond*) is significantly misplaced.  In that case, the Napa County District Attorney brought a UCL action against the operator of numerous skilled nursing facilities located throughout the state, only one of which was in Napa.  Restitution was not at issue, and no one challenged the District Attorney's ability to seek civil penalties for violations occurring outside of Napa County.

The issue in the case involved the scope of a *stipulated settlement* between the District Attorney and the defendant.  In exchange for general injunctive relief (i.e., comply with applicable laws in the future) and payment of civil penalties, the settlement made the Napa County District Attorney the "exclusive government agency" for enforcing the injunction.  (*Hy-Lond, supra,* 93 Cal.App.3d at p. 741, fn. 1.)  It further precluded anyone acting on behalf of the State of California from prosecuting any UCL action against defendant "for alleged violations of any acts covered by the injunction." (*Id.* at p. 741, fn. 2.)  It also purported to bar the State or any state administrative agency from taking any action to suspend or revoke defendant's license based on alleged acts referred to in the complaint.  (*Ibid.*)  If the stipulation were enforced, neither the state Attorney General nor relevant state administrative agencies nor district attorneys in other counties could take any action against the defendant based on either past or future law violations so long as the injunction remained in place.

Not surprisingly, the *Hy-Lond* court concluded that the Napa County District Attorney exceeded his authority in agreeing to the settlement—and the court erred in entering a judgment incorporating the settlement terms—because "an injunction cannot

9

be granted to prevent the execution of a public statute by officers of the law for a public benefit." (*Hy-Lond, supra,* 93 Cal.App.3d at p. 753.) The problem was in limiting enforcement as to *future* violations. (See *Avco Community Developers, Inc. v. South Coast Regional Com* (1976) 17 Cal.3d 785, 800 ["it is settled that the government may not contract away its right to exercise the police power in the future"].) In other words, said the *Hy-Lond* court, "the district attorney has purported to stipulate to restraints which the court could not properly impose." (*Hy-Lond, supra,* 93 Cal.App.3d at p. 753.) Here, the Orange County District Attorney hasn't offered to stipulate to anything, and the court hasn't proposed to approve any stipulation. No one has suggested limiting the power of the Attorney General or any district attorney to do anything, in the future or otherwise. Any musings by the *Hy-Lond* court about territorial limitations on the authority of the county district attorney are just that—musings.

C

The resounding theme so far is that we should not be deciding anything about a local district attorney's authority to request restitution and civil penalties attributable to victims and conduct outside the county. The issues the defendants seek to frame by means of their motion to strike are not squarely—or even unsquarely—presented. And certainly, there are no exceptional circumstances that warrant a departure from the general rule that we do not review undeveloped legal issues at the pleading stage of a lawsuit.

But even if the issues were properly presented in a procedural context that demanded their resolution, the majority opinion reaches the wrong result. If the Orange

10

County District Attorney succeeds in proving his case, there is nothing inherently problematic about *the court* awarding restitution to statewide victims of defendants' unlawful business practice. As already noted, even absent a request by the District Attorney the court is empowered by section 17203 to award restitution to "to *any person*" adversely affected by the defendants' unlawful conduct. This includes, potentially, residents of counties other than Orange. And it is well established that the District Attorney's action will have no res judicata effect on a private party's restitution claim, except to the extent that the party signs a release. (*Payne v. National Collection Systems, Inc.* (2001) 91 Cal.App.4th 1037, 1047 ["traditional res judicata principles have no application to a judgment resulting from an unlawful competition law lawsuit filed by the Attorney General or another public prosecutor in a subsequent lawsuit brought by a victim of improper business practices"]; see *Kamm v. California City Development Co.* (9th Cir. 1975) 509 F.2d 205, 208 [victims who accepted restitution obtained in Attorney General action *and signed releases* were barred from pursuing private action].)

Nor should there be a problem with the court awarding civil penalties based on any statewide violations ultimately proven in this action. The penalties are the punishment imposed for each violation proved in a law enforcement action brought on behalf of the People of the State of California. If the violation is proved, the penalties are appropriately imposed. Assume a criminal defendant is charged with multiple offenses as part of a single crime spree that spanned several counties. Convicted of all offenses following a trial in one of the counties, surely the defendant would not be heard to argue that the district attorney could not request punishment and the court could not sentence

11

him on any of the crimes he committed in a different county.  (See, e.g., *People v. Sering* (1991) 232 Cal.App.3d 677, 684–685.)  And this would be true regardless whether the punishment is incarceration or a monetary fine.  The result in this case, involving civil penalties, should be no different.[7]

The Attorney General is the "chief law enforcement officer of the State" with supervisory authority over district attorneys.  (Cal. Const. art. V, § 13.)  District attorneys are county officers.  (Cal. Const. art. XI, § 1, subd. (b).)  From these broad conceptual provisions the majority somehow infer a constitutional impediment to interpreting the UCL as allowing a district attorney to seek statewide monetary relief.  (Maj. opn., *ante*, at p. 32.)  But constitutional restrictions and limitations on the Legislature's power "are to be construed strictly, and are not to be extended to include matters not covered by the language used."  (*Collins v. Riley* (1944) 24 Cal.2d 912, 916.)  "If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action."  (*Ibid.*; *Methodist Hosp. of Sacramento v. Saylor* (1971) 5 Cal.3d 685, 691.)  Indeed, in seeking to avoid a supposed constitutional conflict, the majority's expansive interpretation of these constitutional provisions may have unwittingly created one.  (*Schabarum v. California Legislature* (1998) 60 Cal.App.4th

---

[7]    It makes no difference that the penalties are allocated by statute to the county treasurer when the enforcement action is prosecuted by the local district attorney. (§ 17206, subd. (c).)  It is certainly reasonable for the Legislature to conclude that revenue from the penalties should benefit the county whose resources were used to prosecute the action and recover the penalties.  This is particularly true where the statute specifies that the funds thus recovered are to be used exclusively for the enforcement of consumer protection laws.  (*Ibid.*)

1205, 1218 ["the only judicial standard commensurate with the separation of powers doctrine is one of strict construction to ensure that [constitutional] restrictions on the Legislature are in fact imposed by the people rather than by the courts in the guise of interpretation"].)

D

Well-tested principles underlie the traditional reticence of intermediate appellate courts to engage in interlocutory writ review of trial court procedural rulings such as the one at issue in this case. (See *Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1273.) Rarely do those principles so uniformly counsel against issuance of writ relief as they do here. In choosing to ignore these sound prudential considerations, the majority reach out to unnecessarily resolve—incorrectly in my view—an internecine dispute among public prosecutors, to the ultimate detriment of the "public" we are all charged with serving.

I would deny the petition.

DATO, J.

13