# IN THE SUPREME COURT OF CALIFORNIA

ABBOTT LABORATORIES et al.,
Petitioners,

v.

THE SUPERIOR COURT OF ORANGE COUNTY,
Respondent;

THE PEOPLE ex rel. TONY RACKAUCKAS, as District
Attorney, etc.,
Real Party in Interest.

S249895

Fourth Appellate District, Division One
D072577

Orange County Superior Court
30-201600879117-CU-BT-CXC

June 25, 2020

Justice Liu authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Cuéllar, Kruger and Fujisaki* concurred.

---

* Associate Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Justice Kruger filed a concurring opinion, in which Chief Justice Cantil-Sakauye and Justice Corrigan concurred.

---

ABBOTT LABORATORIES v. SUPERIOR COURT

S249895

Opinion of the Court by Liu, J.

The Orange County District Attorney (District Attorney) brought this action against several pharmaceutical companies, alleging that the companies had intentionally delayed the sale of a generic version of a popular pharmaceutical drug to maximize their profits at the expense of consumers throughout California. The companies moved to strike references to "California" in the complaint, arguing that the District Attorney has no jurisdiction to enforce California's consumer protection laws outside the geographic boundaries of Orange County. After the trial court denied the motion to strike, the companies obtained an order from the Court of Appeal directing the trial court to grant the motion.

The People, as real party in interest and represented by the District Attorney, have asked this court to determine whether the District Attorney's authority to enforce California's consumer protection laws under the auspices of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.) is limited to the county's borders. We hold it is not: The UCL does not preclude a district attorney, in a properly pleaded case, from including allegations of violations occurring outside as well as within the borders of his or her county.

**I.**

The District Attorney initiated this action by filing a complaint in the name of the People of the State of California against Abbott Laboratories, AbbVie Inc., Teva

1

Pharmaceuticals USA, Inc.; Barr Pharmaceuticals, Inc; Duramed Pharmaceuticals Inc.; and Duramed Pharmaceutical Sales Corp. (collectively, Abbott). The complaint alleged that Abbott violated the UCL by entering into agreements to delay the market debut of generic versions of Niaspan, a prescription drug used to treat high cholesterol. As a result, the District Attorney alleges, users of Niaspan, their insurers, public health care providers, and other government entities paid substantially higher prices for Niaspan than they would have if the generic version had been available without improper delay. The District Attorney sought an injunction prohibiting Abbott from further violating the UCL and an order for restitution and civil penalties, including treble penalties for violations that injured senior citizens or disabled persons. (Bus. & Prof. Code, §§ 17203, 17206, 17206.1; Civ. Code, § 3345; all undesignated statutory references are to the Business and Professions Code.)

Abbott, in turn, filed a motion to strike "claims for restitution and civil penalties to the extent that those are not limited to Orange County." Noting that the District Attorney's complaint makes no specific claim to penalties or restitution extending beyond the bounds of the county, Abbott asked the trial court to strike 16 references to "California" from the complaint on the ground that a district attorney's enforcement authority under the UCL is limited to the geographic boundaries of his or her county. According to Abbott, the motion was intended to "focus" the case, discovery, and scope of any potential settlement.

The trial court denied the motion to strike, finding "premature" Abbott's concerns about the scope of discovery and financial exposure as well as any enforcement concerns that might arise if the Attorney General were excluded from a

negotiated statewide settlement. The court explained: "If there's a settlement, I can guarantee you the Attorney General . . . is going to know about [it]. So, we will deal with that if and when. . . . There are going to be more players in any kind of settlement unless there's a carve-out." The court did not refer specifically to the geographic scope of the District Attorney's authority during the hearing or in its minute order.

Abbott sought review by means of a writ petition. A divided Court of Appeal overruled the District Attorney's demurrer and granted relief to Abbott, directing the trial court to vacate its order denying the motion to strike and to enter a new order striking the allegations under which the District Attorney sought statewide monetary relief. (*Abbott Laboratories v. Superior Court* (2018) 24 Cal.App.5th 1, 31 (*Abbott*).)

The Court of Appeal observed that "though district attorneys have plenary authority to pursue actions in the criminal arena in the State's name [citation], their 'authority is territorially limited' to the confines of their county." (*Abbott, supra,* 24 Cal.App.5th 1, 19, quoting *Pitts v. County of Kern* (1998) 17 Cal.4th 340, 361 (*Pitts*).) By contrast, "with respect to civil actions, a district attorney has no plenary power." (*Abbott,* at p. 19.) "Rather, it is settled that a 'district attorney has no authority to prosecute civil actions absent specific legislative authorization.' " (*Id.* at p. 20, quoting *People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 753 (*Humberto S.*).) As to whether the UCL grants such authority, the court looked to *People v. Hy-Lond Enterprises, Inc.* (1979) 93 Cal.App.3d 734 (*Hy-Lond*), which held that a district attorney has no authority to limit the powers of the Attorney General or other public agencies under the guise of UCL enforcement. (*Hy-Lond,* at

3

pp. 752–753.) The Court of Appeal here explained it had "no difficulty applying *Hy-Lond*'s principles to bar a district attorney's unilateral effort to seek restitution and civil penalties for UCL violations occurring outside his or her own county jurisdiction." (*Abbott*, at p. 25.)

Writing in dissent, Justice Dato explained that Abbott had failed to "offer anything approaching an 'extraordinary reason' to justify this court's decision to intervene at the pleading stage" in order to address "a motion to strike that does not challenge the plaintiff's ability to plead a valid claim, but merely seeks to edit the language of the complaint in a manner that better suits the defendants' tactical purposes." (*Abbott, supra*, 24 Cal.App.5th at p. 34 (dis. opn. of Dato, J.).) Even if Abbott had met this threshold showing, Justice Dato continued, "the majority opinion reaches the wrong result." (*Id.* at p. 37 (dis. opn. of Dato, J.).) According to Justice Dato, it is the court, not the plaintiff, that awards restitution, and "there is nothing inherently problematic about *the court* awarding restitution to statewide victims of defendants' unlawful business practice." (*Ibid.*) "[E]ven absent a request by the District Attorney the court is empowered by section 17203 to award restitution 'to *any person*' adversely affected by the defendants' unlawful conduct. . . . This includes, potentially, residents of counties other than Orange." (*Ibid.*, quoting § 17203, italics added by Dato, J.) Similarly, Justice Dato explained, the court could impose civil penalties based on any violation proven in the case, within or outside of Orange County: "The penalties are the punishment imposed for each violation proved in a law enforcement action brought on behalf of the People of the State of California. If the violation is proved, the penalties are appropriately imposed." (*Abbott*, at p. 38 (dis. opn. of Dato, J.).) Finally, Justice Dato

4

rejected Abbott's argument that a district attorney may not bind the Attorney General in settlement, explaining "it is well established that the District Attorney's action will have no res judicata effect on a private party's restitution claim, except to the extent that the party signs a release." (*Id.* at p. 37 (dis. opn. of Dato, J.).)

We granted the District Attorney's petition for review, which was limited to the Court of Appeal's decision to grant writ relief. The District Attorney did not seek review of the portion of the Court of Appeal's opinion overruling the demurrer. Accordingly, we express no view on the service requirements of section 17209, as all papers filed in this court have been properly served upon the Attorney General. (See § 17209 [requiring service of appellate briefs or petitions in UCL matters on the Attorney General within three days of filing with the court].)

## II.

We review the trial court's denial of the motion to strike for abuse of discretion. (*Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 309.) To the extent the decision rested upon a legal determination as to the scope of the District Attorney's authority, it is a question of law subject to de novo review. (*Ibid.*; see *Pitts, supra,* 17 Cal.4th at p. 345.)

## A.

The UCL prohibits unfair competition, defined as "any unlawful, unfair, or fraudulent business act or practice." (§ 17200.) The statute's "purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.) "In service of that purpose, the Legislature

framed the UCL's substantive provisions in ' "broad, sweeping language" ' " (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320) to reach "anything that can properly be called a business practice and that at the same time is forbidden by law" (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 113). "By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180, quoting *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1103.) " '[T]he Legislature . . . intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur.' " (*Cel-Tech*, at p. 181, quoting *American Philatelic Soc. v. Claibourne* (1935) 3 Cal.2d 689, 698.)

To that end, the Legislature has created a scheme of overlapping enforcement authority. Section 17204 provides that actions for relief under the UCL may be prosecuted "by the Attorney General or a district attorney or by a county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, or by a city attorney of a city having a population in excess of 750,000, or by a city attorney in a city and county or, with the consent of the district attorney, by a city prosecutor in a city having a full-time city prosecutor in the name of the people of the State of California upon their own complaint or upon the complaint of a board, officer, person, corporation, or association, or by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."

The UCL grants broad equitable authority to courts to remedy violations.  Section 17203 provides in relevant part: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction.  The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."  Such remedies are "cumulative . . . to the remedies or penalties available under all other laws of this state."  (§ 17205.)

While the UCL provides for both public and private enforcement, authorized public prosecutors have an additional tool to enforce the state's consumer protection laws:  civil penalties.  "Any person who engages, has engaged, or proposes to engage in unfair competition shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General, by any district attorney, by any county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, by any city attorney of a city having a population in excess of 750,000, by any city attorney of any city and county, or, with the consent of the district attorney, by a city prosecutor in any city having a full-time city prosecutor, in any court of competent jurisdiction."  (§ 17206, subd. (a).)  "The court shall impose a civil penalty for each violation of [the UCL].  In assessing the amount of the civil penalty, the court shall consider any one or more of

the relevant circumstances presented by any of the parties to the case, including, but not limited to, the following: the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth." (§ 17206, subd. (b).) "If the action is brought by a district attorney or county counsel, the penalty collected shall be paid to the treasurer of the county in which the judgment was entered." (§ 17206, subd. (c); see also § 17207 [similar provisions for civil penalties against any person who intentionally violates any injunction prohibiting unfair competition].)

## B.

Abbott argues that this case is controlled by our statement in *Safer v. Superior Court* (1975) 15 Cal.3d 230, 236 (*Safer*) that "the Legislature has manifested its concern that the district attorney exercise the power of his office only in such civil litigation as that lawmaking body has, after careful consideration, found essential." According to Abbott, the UCL contains no legislative finding that statewide enforcement by district attorneys is "essential" to the purpose of the UCL.

The proceedings at issue in *Safer* arose when a farmworkers' union set up picket lines around the fields of several Ventura County strawberry growers. (*Safer, supra,* 15 Cal.3d at p. 233.) The growers filed suit to obtain injunctive relief against the union and its members, and the trial court issued a temporary restraining order limiting the spacing and number of pickets. The next day, the Ventura County Sheriff arrested a number of participants in ongoing picketing

activities, charging three with willful disobedience of a lawful court order, a misdemeanor offense. Then, when the defendants appeared for jury trial, the district attorney dismissed the misdemeanor charges and instead served them with orders to show cause in contempt proceedings initiated under Code of Civil Procedure section 1209. (*Safer*, at p. 234.) The net result of these maneuvers was "to convert a misdemeanor proceeding, in which defendants had the protection of a jury trial and other statutory safeguards, into a contempt proceeding, in which defendants would be stripped of these protections." (*Ibid.*) The defendants demurred and, alternatively, sought jury trial on the civil charges. The trial court denied relief.

We held that the trial court acted in excess of its jurisdiction when it permitted the district attorney to prosecute a contempt proceeding arising from private civil litigation "in which the district attorney could rest his participation neither upon standing as a party nor upon statutory authorization." (*Safer*, *supra*, 15 Cal.3d at p. 233.) Our analysis began with a survey of instances in which the Legislature empowered a district attorney to bring a civil action. (*Id.* at pp. 236–237.) Observing that none of these authorization statutes "empower a district attorney to intervene at will in a civil case involving private parties in an economic dispute" (*id.* at p. 236), we discerned a "general mandate" on the part of the Legislature "that public officers not use their funds and powers to intervene in private litigation" (*id.* at p. 237). We held that because the district attorney was not authorized to intervene in the underlying labor dispute, the trial court exceeded its jurisdiction by permitting the district attorney to institute the civil contempt proceedings. (*Id.* at pp. 242–243.)

Although *Safer* specifically concerned "a disturbing instance" of intervention by a public prosecutor in private civil litigation (*Safer, supra,* 15 Cal.3d at p. 242), Abbott notes that we have cited *Safer* for the general proposition that "a district attorney has no authority to prosecute civil actions absent specific legislative authorization." (*Humberto S., supra*, 43 Cal.4th at p. 753 & fn. 12 [citing cases]; see *Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1155–1156 [citing *Safer* to explain that if a specific provision of the Cartwright Act authorizing the district attorney to bring antitrust actions on behalf of the county or its subdivisions did not exist, the district attorney would be unable to do so].)

Even assuming *Safer* established a general requirement that a district attorney may not pursue civil litigation without specific legislative authorization, that requirement is satisfied with regard to a district attorney's authority to bring a UCL action. As we explained in *People v. McKale* (1979) 25 Cal.3d 626, a case concerning a district attorney's authority to prosecute violations of the Mobilehome Parks Act (Health & Saf. Code, § 18200 et seq.) under the UCL: "While [*Safer*] held a district attorney may prosecute civil actions only when the Legislature has specifically authorized, specific power exists in the instant case. The district attorney is expressly authorized to maintain a civil action for either injunctive relief or civil penalties for acts of unfair competition. (Bus. & Prof. Code, §§ 17204, 17206.)" (*McKale*, at p. 633.) The question in this case is not whether the District Attorney can bring "unlawful" UCL claims predicated on violations of the antitrust laws, but whether the District Attorney can seek remedies under the UCL for conduct occurring outside of his county. *Safer* says nothing about the scope of remedies that may be sought.

10

As to this question, Abbott concedes that the District Attorney may seek and obtain statewide injunctive relief upon a sufficient showing before the trial court. This concession follows directly from the text of the UCL's provision on enforcement of injunctive relief. Section 17207, subdivision (a) provides: "Any person who intentionally violates any injunction prohibiting unfair competition issued pursuant to Section 17203 shall be liable for a civil penalty not to exceed six thousand dollars ($6,000) for each violation." Section 17207, subdivision (b) then provides that such penalties "shall be assessed and recovered in a civil action brought in any county in which the violation occurs *or where the injunction was issued*." (Italics added.) In other words, section 17207 explicitly contemplates that an injunction issued in one county may operate to prohibit future violations in another county. "The purpose of such relief, in the context of a UCL action, is to protect California's consumers against unfair business practices by stopping such practices in their tracks. An injunction would not serve the purpose of prevention of future harm if only those who had already been injured by the practice were entitled to that relief." (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 320.)

There is thus no dispute as to the District Attorney's general authority to bring UCL claims or his specific authority to pursue statewide injunctive relief. The issue here, more precisely, is whether a civil enforcement action initiated by a district attorney under the UCL may seek civil penalties for violations occurring outside of the district attorney's county as well as restitution on behalf of Californians who do not reside in the county. To answer that question, we return to the text and purpose of the UCL.

## C.

" ' "[O]ur fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' " ' [Citation.]  As always, we start with the language of the statute, 'giv[ing] the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose.' " (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135.)  As the parties and amici curiae observe, the text of the UCL does not explicitly address the geographic scope of a district attorney's authority to seek civil penalties and restitution.  But the statute does contain several clues that bear on the question presented.

First, in addition to contemplating statewide injunctions (§ 17207), the UCL authorizes courts to "make such orders or judgments . . . as may be necessary to restore to *any person* in interest any money or property . . . which may have been acquired by means of . . . unfair competition" (§ 17203, italics added).  Further, with regard to civil penalties, the statute says: "The court shall impose a civil penalty *for each violation* of [the UCL]." (§ 17206, subd. (b), italics added.)  The broad language of these provisions is not qualified by any reference to geography or the identity of the plaintiff.  The statute contains no geographic limitation on the scope of relief that courts may order in an enforcement action brought by a district attorney.

The purpose of the quoted language of section 17206 was to codify the standard set forth in *People v. Superior Court* (*Olson*) (1979) 96 Cal.App.3d 181, 198, for determining the number of violations and corresponding civil penalties resulting from the publication or broadcast of a media advertisement. (See Stats. 1992, ch. 430, § 4, pp. 1707–1708; Sen. Com. on

Judiciary, Analysis of Sen. Bill No. 1586 (1991–1992 Reg. Sess.) as amended May 4, 1992, pp. 1–2.) Although the legislative history does not include any specific consideration of the question before us, it is notable that the *Olson* case was brought by the Orange County District Attorney seeking injunctive relief and civil penalties for false advertisements that ran in multiple counties and that targeted homeowners in Orange County and Riverside County. (*Olson*, at p. 185 & fn. 2.). Neither *Olson* nor the legislative history of the 1992 amendment to the UCL raised any concern about the geographic scope of relief sought in an enforcement action by a district attorney.

Second, section 17206, subdivision (c) provides in part: "If the action is brought by the Attorney General, one-half of the penalty collected shall be paid to the treasurer of the county in which the judgment was entered, and one-half to the General Fund." (See also § 17207, subd. (c) [similarly allocated civil penalties recovered for violation of injunction prohibiting unfair competition, with one-half to the treasurer of the county in which the judgment was entered and one-half to the State Treasurer].) The Legislature's allocation of one-half of civil penalties in a statewide action to the county in which the judgment was entered indicates that the Legislature did not design the civil penalty scheme to ensure an allocation of civil penalties to counties in accordance with the number of violations in each county. Rather, penalties are awarded in large part based on the location in which judgment is entered, regardless of the number of violations proven or their corresponding locations.

Third, in making injunctions prohibiting unfair competition widely enforceable throughout the state, section 17207, subdivision (b) distinguishes between "any county in

which the violation occurs" and "any county . . . where the injunction was issued." In other words, the county "where the injunction was issued" is not necessarily the county "in which the violation [of the injunction] occurs," and civil penalties to punish violation of an injunction may be obtained through a civil action filed in either type of county. (*Ibid.*) Thus, for example, if an injunction entered in Orange County is violated in Riverside County, civil penalties for that violation may be recovered in a civil action brought in Orange County. By its terms, section 17207 not only confirms that courts may grant statewide injunctive relief, but also contemplates that an action brought in the county where an injunction was issued may result in an imposition of civil penalties for violations occurring in other counties. Moreover, section 17207 shows that the Legislature knows how to write language limiting the award of civil penalties to the county "in which the violation occurs." But it did not enact any such limitation in section 17207 (civil penalties for violation of an injunction) or in section 17206 (civil penalties for engaging in unfair competition) based on the identity of the plaintiff. As noted, the latter provision states without qualification: "The court shall impose a civil penalty for each violation of this chapter." (§ 17206, subd. (b).)

A straightforward reading of the UCL's broad language is consistent with the statute's purpose and history. As the parties note, there is no specific indication in the voluminous legislative record of the UCL that the Legislature intended to grant statewide enforcement authority to district attorneys or to withhold such authority from them. But what the record does reveal is a clear trajectory toward greater and overlapping public enforcement at all levels of government.

The scope of public UCL enforcement has expanded in the decades since the statute's enactment in 1933. (See *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 129–130.) Although the statute originally provided only for injunctive relief, the Legislature granted to the Attorney General and district attorneys the authority to obtain civil penalties for violations of the UCL in 1972. (Compare Stats. 1963, ch. 1606, § 1, p. 3184 with Stats. 1972, ch. 1084, § 2, p. 2021.) In 1974, the same authority to seek injunctive relief and civil penalties was extended to city attorneys of jurisdictions with a population in excess of 750,000, despite objections that "prosecution of unfair competition cases should be a county-wide function, rather than broken up into cities," because "harmful competition will arise between the two entities." (Sen. Republican Caucus, Analysis of Sen. Bill No. 1725 (1973–1974 Reg. Sess.) as amended Apr. 24, 1974, p. 2; see Stats. 1974, ch. 746, § 1, pp. 1654–1655.) The law was amended in 1988 to grant standing to the San Jose City Attorney (Stats. 1988, ch. 790, § 1, pp. 2557–2558), in 1991 to grant standing to all county counsel (Stats. 1991, ch. 1195, § 1, p. 5799), and in 1992 to grant standing to all city attorneys with the consent of their respective district attorneys (Stats. 1992, ch. 430, § 4, p. 1707; see generally Fellmeth, *California's Unfair Competition Act: Conundrums and Confusions* (Jan. 1995) published as part of Recommendation on Unfair Competition Litigation (Nov. 1996) 26 Cal. Law Revision Com. Rep. 227, 234 & fn. 24). These amendments were generally opposed by the California District Attorneys Association (CDAA), which argued that the Attorney General and district attorneys had the "training and experience" to best serve the public interest in the area of consumer protection and that "their effectiveness may well be jeopardized

or compromised through the expansion of this section." (Exec. Dir., Cal. District Attorneys Assn., letter to Sen. Ayala re. Sen. Bill No. 709 (1991–1992 Reg. Sess.) May 10, 1991; see also Assem. Com. on Judiciary, Analysis of Sen. Bill No. 2440 (1987–1988 Reg. Sess.) as amended June 9, 1988, pp. 1–2 [similar]; but see Dept. Consumer Affairs, Enrolled Bill Rep. on Sen. Bill No. 1586 (1991–1992 Reg. Sess.) July 23, 1992, p. 3 [noting the CDAA's neutral position to compromise legislation sponsored by retailers].)

The sole exception to this trajectory of expanding UCL enforcement was the 2004 enactment of Proposition 64, which revised the UCL's standing provisions for private individuals by providing that "a private person has standing to sue only if he or she 'has suffered injury in fact and has lost money or property as a result of such unfair competition.' " (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227, quoting § 17204, as amended by Prop. 64, § 2.) Proposition 64 had no effect on suits brought by the Attorney General, the district attorneys, or other public prosecutors.

In sum, the text of the UCL grants broad civil enforcement authority to district attorneys, and this broad grant of authority is consistent with the statute's purpose and history. We see no indication that in an enforcement action brought by a district attorney, the Legislature intended to limit civil penalties or restitution to the geographic boundaries of the district attorney's county.

## III.

Abbott contends that we must read a geographic limitation into the District Attorney's UCL enforcement authority in order to give effect to the "hierarchical structure of

16

the prosecutorial function within California's executive branch"
as set forth in the California Constitution.

Article V, section 13 of the state Constitution provides:
"Subject to the powers and duties of the Governor, the Attorney
General shall be the chief law officer of the State. It shall be the
duty of the Attorney General to see that the laws of the State
are uniformly and adequately enforced. The Attorney General
shall have direct supervision over every district attorney and
sheriff and over such other law enforcement officers as may be
designated by law, in all matters pertaining to the duties of their
respective offices, and may require any of said officers to make
reports concerning the investigation, detection, prosecution, and
punishment of crime in their respective jurisdictions as to the
Attorney General may seem advisable. Whenever in the opinion
of the Attorney General any law of the State is not being
adequately enforced in any county, it shall be the duty of the
Attorney General to prosecute any violations of law of which the
superior court shall have jurisdiction, and in such cases the
Attorney General shall have all the powers of a district attorney.
When required by the public interest or directed by the
Governor, the Attorney General shall assist any district
attorney in the discharge of the duties of that office."

This provision mentions "the powers of a district attorney"
but does not define those powers except by reference to "the
investigation, detection, prosecution, and punishment of crime
in their respective jurisdictions." (Cal. Const., art. V, § 13.)
Elsewhere, the state Constitution requires the Legislature to
provide for each county "an elected district attorney" (Cal.
Const., art. XI, § 1, subd. (b)) but does not elucidate the district
attorney's powers. Rather, the Legislature has conferred upon
district attorneys both criminal and civil enforcement authority

as a matter of statute, declaring that "the district attorney is the public prosecutor, except as otherwise provided by law" (Gov. Code, § 26500, 1st par.), and providing for certain secondary duties when he or she is "not engaged in criminal proceedings in the superior court or in civil cases on behalf of the people" (*id.*, § 26501). When a district attorney prosecutes criminal violations of state law, he or she acts in a state rather than a local capacity, and that authority is "territorially limited." (*Pitts*, *supra*, 17 Cal.4th at p. 361; see *People v. Eubanks* (1996) 14 Cal.4th 580, 589 [district attorney of each county is vested with power to conduct prosecutions of criminal offenses "within the county"].)

In reading the language of the constitutional provisions concerning the role of the Attorney General and district attorneys, we find nothing in those provisions that constrains the Legislature's prerogative to structure UCL enforcement so that a district attorney has authority to seek civil penalties and restitution for violations outside of his or her county. The UCL does not undermine the Attorney General's constitutional role as California's chief law enforcement officer. In particular, the public enforcement authority that the UCL grants to district attorneys does not constrain the Attorney General's prerogative to intervene or take control of a civil enforcement action that, in the Attorney General's view, does not adequately serve the public interest. (See Cal. Const., art. V, § 13 ["Whenever in the opinion of the Attorney General any law of the State is not being adequately enforced in any county, it shall be the duty of the Attorney General to prosecute any violations of law of which the superior court shall have jurisdiction, and in such cases the Attorney General shall have all the powers of a district attorney."]; Gov. Code, § 12550 [Attorney General "has direct

supervision over the district attorneys," and "[w]hen he deems it advisable or necessary in the public interest . . . , he shall assist any district attorney in the discharge of his duties, and may, where he deems it necessary, take full charge of any investigation or prosecution of violations of law of which the superior court has jurisdiction"].)  In the UCL context, the Attorney General's supervisory role is facilitated by the requirement that all appellate briefs or petitions in a UCL matter be served upon the Attorney General.  (§ 17209.)  Thus, the ultimate locus of control and accountability for UCL actions is the office of the Attorney General.

The Attorney General, as amicus curiae, does not join Abbott's constitutional arguments but offers three practical concerns in support of Abbott's position.  First, the Attorney General suggests that the District Attorney's position would present "conflicts of interest" between local prosecutors' responsibility to statewide victims, to whom they are not politically accountable, and their own incentives to secure a greater share of available remedies for local constituencies.  "The result," according to the Attorney General, "could be a degradation of UCL enforcement, as local prosecutors compete to be the first to settle a case and secure penalties for local use."  Second, "granting statewide enforcement authority to local prosecutors would endanger California's ability to credibly lead the way in matters of national or international prominence" by compromising the Attorney General's primary role in consumer enforcement.  Third, the Attorney General contends, the "widely recognized geographic limitations on district and city attorneys' UCL authority have formed the basis for decades of interoffice cooperation" between state and local prosecutors, and this cooperation, which is crucial to the intensive investigations and

litigation necessary to pursue UCL claims, would be jeopardized by a rule allowing any district attorney to pursue statewide remedies. The CDAA, as amicus curiae, echoes these concerns, adding that an "assertion of statewide jurisdiction and preemptive authority . . . should come . . . only after a careful analysis by the State Legislature to resolve competing policy objectives." (See *Stop Youth Addiction, Inc. v. Lucky Stores* (1998) 17 Cal.4th 553, 578.)

These concerns are not without force, and we do not take them lightly. But two caveats are in order. First, the Attorney General's "conflict of interest" concern appears directed solely at civil penalties rather than restitution, as restitution is paid to victims, not the county, and thus does not create the same "race to file" incentive. Second, all of these concerns are presented in the abstract. In support of his argument, the Attorney General offers a single example of a district attorney unilaterally pursuing statewide relief in parallel with a coalition of state and local prosecutors. As the Attorney General recounts, the District Attorney of Trinity County, represented by contingency fee counsel, sued Volkswagen shortly after the discovery of the worldwide diesel emissions cheating scandal, even as the Attorney General was investigating the same conduct in what eventually resulted in litigation involving all 50 states as well as federal and foreign agencies. Although the Attorney General suggests that "granting statewide enforcement authority to local prosecutors would endanger California's ability to credibly lead the way in matters of national or international prominence," he reports that the district attorney in that matter dropped his case with no apparent negative effects.

In any event, we note that concerns similar to those raised by amici curiae have been conveyed to the Legislature at various

junctures when it considered proposals to expand local enforcement (*ante*, at pp. 15–16), and the Legislature nevertheless chose to create a decentralized enforcement model in which a district attorney has authority to obtain statewide relief. Although arguments in favor of a more centralized model are not without merit, the Legislature reasonably could have believed that an overlapping scheme of decentralized enforcement has several potential advantages.

First, "for a defendant in a state the size of California, a law enforcement action alleging a statewide unlawful business practice and seeking monetary relief creates, at least potentially, a substantial economic exposure. To the extent law enforcement can be Balkanized and monetary relief limited to local jurisdictions—especially early in the litigation—a defendant's 'management' of the exposure is greatly facilitated." (*Abbott*, *supra*, 24 Cal.App.5th at p. 32 (dis. opn. of Dato, J.).)

Second, although it is possible that a district attorney will pursue a settlement that undervalues the true scope of statewide claims, it is also possible that the alternative would be no enforcement or penalty at all for violations outside of the district attorney's county. Indeed, the limited enforcement resources of the Attorney General have been a significant factor in the Legislature's repeated expansion of public enforcement authority under the UCL. Although concerns about conflicts of interest or duplicative enforcement have been expressed each time the Legislature expanded the scope of UCL enforcement, neither the legislative record nor the briefing before us points to any concrete or widespread problems. "Pursuing litigation against corporate defendants is expensive, and the Legislature was doubtless aware that both financial and political considerations may sometimes discourage a public prosecutor

from undertaking such a case. Consistent with the UCL's broad remedial purposes and the perceived need for vigorous enforcement, there is nothing unconstitutional about the Legislature's decision to permit and encourage multiple public prosecutors with overlapping lines of authority on the theory that more enforcement in this context is better than less." (*Abbott*, *supra*, 24 Cal.App.5th at p. 35 (dis. opn. of Dato, J.).)

Without denying that the UCL scheme may "incentivize public prosecutors [to] act[] in their respective county's financial self-interest" at the expense of full redress for violations in other counties (*Abbott*, *supra*, 24 Cal.App.5th at p. 31), we are unable to conclude that the Legislature necessarily believed this concern outweighs the incentive that the scheme provides for district attorneys to bring enforcement actions that might otherwise not be brought at all. In the litigation before us, there is no indication at this stage that the balance of incentives is tipped toward a settlement that is motivated by a conflict of interest or is otherwise improper. In this case, "the concern about a local district attorney binding other prosecutors to an improper or inadequate settlement is as fanciful as it is premature." (*Id.* at p. 35 (dis. opn. of Dato, J.).) In any event, concerns about local "windfalls" are tempered by the UCL's mandate that all penalties recovered by local prosecutors be used exclusively "for the enforcement of consumer protection laws." (§ 17206, subd. (c).)

Third, as to the Attorney General's leadership role and the value of interjurisdictional cooperation, the Attorney General retains authority to intervene or take over the case (Cal. Const., art. V, § 13; Gov. Code, § 12550), and in any event, the Attorney General has not identified any specific way in which the District Attorney's conduct of this litigation has compromised such

values.  Notably, the trial court here appears quite alert to the importance of the Attorney General's role, explaining that "[i]f there's a settlement, I can guarantee you the Attorney General . . . is going to know about [it].  So, we will deal with that if and when. . . .  There are going to be more players in any kind of settlement unless there's a carve-out."

The Court of Appeal relied on *Hy-Lond*, *supra*, 93 Cal.App.3d 734, in which the Attorney General moved to set aside a stipulated judgment between the Napa County District Attorney and a nursing home operator with facilities in 12 counties.  (*Id.* at pp. 739–742.)  The stipulation provided for general injunctive relief and payment of civil penalties (*id.* at pp. 741–742, 748–749) and designated the Napa County District Attorney as " 'the exclusive governmental agency that may enforce the provision of this injunction' " (*id.* at p. 741, fn. 1).  It purported to absolve the company of past wrongdoings and immunize it from future unfair competition lawsuits brought by anyone acting on behalf of the state for alleged violations of any acts covered by the injunction.  It also purported to bar the state or any of its administrative agencies from taking action to suspend or revoke the company's license based on the alleged acts referred to in the complaint.  (*Id.* at pp. 741, fn. 2, 749.)

*Hy-Lond* held that the Attorney General had standing to intervene and move to vacate the judgment.  Unlike Abbott, the defendants in *Hy-Lond* argued that the district attorney must be able to act on behalf of the state in a civil enforcement action because "parties dealing with the state must be able to negotiate with confidence with the agent authorized to bring the suit, and without the fear that another agency or other state entity might overturn any agreement reached."  (*Hy-Lond*, *supra*, 93 Cal.App.3d at p. 752.)  While acknowledging this concern in the

abstract, the court in *Hy-Lond* reasoned that the parties were on notice that the district attorney had no right "to surrender the powers of the Attorney General and his fellow district attorneys to commence, when appropriate, actions in other counties under the provisions of law." (*Id.* at p. 753.) Moreover, the settlement in *Hy-Lond* ran afoul of the general rule that "an injunction cannot be granted to prevent the execution of a public statute by officers of the law for a public benefit." (*Ibid.*) Finding these principles dispositive, the court noted but did not examine the further argument that a contrary rule would result in an intolerable conflict of interest by "put[ting] the initiating district attorney in the position of bargaining for the recovery of civil penalties that would flow into his county's coffers, at the expense of surrendering the rights and duties of the state to control the respondent's activities generally through the powers of the Attorney General" and other local and state enforcement agencies. (*Ibid.*; see *id.* at p. 754 ["the powers of the district attorney are limited by the recognition of a possible conflict of interest" and corresponding rules of professional conduct].)

*Hy-Lond* is inapposite because it concerned a negotiated settlement that specifically sought to limit future enforcement authority of the Attorney General and other officials. The parties in this case have not reached any settlement; there is no judgment that purports to bind other public prosecutors or limit their enforcement authority; and the role of the Attorney General has not been compromised or usurped. Further, the trial court said that "if [defendants] reach a settlement with the district attorney, unlike the trial court in *Hy-Lond* — and if the [Attorney General] comes in and says I want to be heard about this, you bet I'm going to let them be heard on this." This is not a case where a trial court appears poised to approve a settlement

without affording the Attorney General an opportunity to participate.

Ultimately, the pros and cons of centralization or decentralization in the enforcement of California's consumer protection laws is a matter of policy for the Legislature to decide. We acknowledge amici curiae's concern about democratic accountability, but it is undisputed that the Legislature has authorized local prosecutors to seek a statewide injunction under the UCL. And it is the Legislature, elected by voters across the state, that has decided to allow local prosecutors to seek civil penalties. The state Constitution does not preclude the Legislature's choice of an overlapping scheme of public enforcement, with no geographic limitations on courts' authority to impose civil penalties and award restitution in actions brought by district attorneys. Of course, nothing prevents the voters from petitioning their legislators or placing an initiative on the ballot to restrict this authority for local prosecutors if they believe it is not sound policy. But we have no authority to impose geographic limits on the broad enforcement authority that the text of the UCL grants to district attorneys.

The Court of Appeal, having reached the contrary result, suggested that a district attorney could seek civil penalties beyond the boundaries of his or her county if the Attorney General were to provide written consent to the litigation. But just as the UCL imposes no geographical limits on a district attorney's enforcement authority, it contains no provision requiring the district attorney to obtain the Attorney General's consent to enforce the statute. The Court of Appeal cited statutes dealing with intercounty cooperation between district attorneys' and city attorneys' offices, but those statutes do not mention the Attorney General. Simply put, the UCL does not

require a district attorney to obtain the Attorney General's consent, written or otherwise, before pursuing an enforcement action under the statute.

Finally, we note that the complaint in this case specifically alleges that at least some of the violations occurred in Orange County and that venue is therefore proper in the Orange County Superior Court. We have no occasion to address whether a district attorney could bring a UCL claim for conduct occurring entirely outside the bounds of his or her county. (Cf. § 17207, subd. (b) [public actions to enforce violations of a UCL injunction may be brought by specified local and state officers "in any court of competent jurisdiction within his or her jurisdiction without regard to the county from which the original injunction was issued"].) At the same time, the practical and legal concerns raised by the parties and amici curiae, including questions regarding the preclusive effect of statewide relief obtained by an individual district attorney, may induce the Legislature to consider amending the UCL to add procedures to minimize the risks of conflicting enforcement efforts. A basic starting point would be the provision of notice to the Attorney General and other relevant officials in cases where a district attorney seeks a UCL remedy for violations outside the county's borders.

## CONCLUSION

We reverse the judgement of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion.


**LIU, J.**


**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**FUJISAKI, J.**[*]

---

[*]    Associate Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

ABBOTT LABORATORIES v. SUPERIOR COURT

S249895

Concurring Opinion by Justice Kruger

I agree with the majority opinion that district attorneys exercising their authority to enforce the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.) may seek civil penalties and restitution for violations occurring outside their counties' borders. I write separately, however, to call attention to a gap in the statutory enforcement scheme that the Legislature may wish to fill.

As the majority opinion explains, the text and history of the UCL indicate that when the Legislature empowered district attorneys to sue "in the name of the people of the State of California" (Bus. & Prof. Code, §§ 17204, 17206, subd. (a)), it intended to authorize district attorneys to pursue the full suite of remedies that are available to the state, including civil penalties and restitution for violations occurring outside county borders. But absent an effective mechanism for coordinating efforts, empowering scores of local officials to sue in the name of the State of California will inevitably create some practical challenges. These potential challenges are particularly acute in the context of the UCL, which provides that any civil penalties recovered by a district attorney "shall be paid to the treasurer of the county in which the judgment was entered." (Bus. & Prof. Code, § 17206, subd. (c).) As amici curiae the Attorney General and the California District Attorneys Association observe, this provision creates an incentive for district attorneys to race each

other to the courthouse and to enter settlements that maximize their own counties' recoveries, potentially at the expense of consumers elsewhere in the state. The amici curiae worry that the net effect may be to hamper effective statewide enforcement of the UCL rather than enhance it.

The majority correctly notes that the UCL's system of overlapping public enforcement authority generally has not—to this point—given rise to such difficulties. (Maj. opn., *ante*, at p. 20.) But as a consequence of our decision today—which has dispelled the cloud of uncertainty that had previously hung over statewide enforcement actions brought by district attorneys— we may well see an increase in attempts to bring such actions, and an increased risk that the Attorney General's and California District Attorneys Association's worries will be realized.

In other statutes with similar enforcement regimes, the Legislature has provided a roadmap for how public officials should sort out areas of overlapping responsibility from the moment a complaint is filed. (See, e.g., Gov. Code, § 12652 [spelling out specific procedures for the Attorney General and local prosecuting authorities to follow to ensure coordination in pursuing False Claims Act violations].) Such provisions implicitly recognize that the Attorney General is "the chief law officer of the State," obligated "to see that the laws of the State are uniformly and adequately enforced," and accorded the authority to exercise "direct supervision over every district attorney." (Cal. Const., art. V, § 13.) They also recognize that the Attorney General's ability to carry out these obligations depends, in the first instance, on receiving adequate notice of relevant claims.

The UCL lacks a comparable notification provision for trial proceedings. It does contain one for appellate matters: On appeal, the parties must serve the Attorney General with copies of their briefs and petitions. (Bus. & Prof. Code, § 17209.) The required notice ensures that the Attorney General is aware of appellate proceedings that may generate published, binding precedent and affect future interpretations of the law. But for the surely far greater number of UCL cases that are resolved in the trial courts, the current statutory scheme contains no mechanism to ensure notice. As the majority opinion notes, the Attorney General has the authority "to intervene or take control of a civil enforcement action that, in the Attorney General's view, does not adequately serve the public interest." (Maj. opn., *ante*, at p. 18, citing Cal. Const., art. V, § 13 and Gov. Code, § 12550.) But to exercise those constitutional powers—or even, at a lesser level, to provide input, direction, or oversight—the Attorney General must first be aware of the existence of the underlying action.

The Legislature may wish to fill this gap by requiring that district attorneys and other public prosecutors serve the Attorney General with a copy of any UCL complaint whose prayer for relief seeks monetary relief for violations occurring beyond the borders of their respective jurisdictions. Such a requirement—which would parallel the existing statutory requirement to serve the Attorney General with copies of each appellate brief or petition—would go a significant way toward addressing the legitimate concerns the Attorney General and other district attorneys have expressed about the powers we recognize today, and toward facilitating coordination and

collaboration between different enforcing authorities in the future.

**KRUGER, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Abbott Laboratories v. Superior Court

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XX 24 Cal.App.5th 1
**Rehearing Granted**

_____

**Opinion No.** S249895
**Date Filed:** June 25, 2020

_____

**Court:**  Superior
**County:**  Orange
**Judge:**  Kim G. Dunning

_____

**Counsel:**

Kirkland & Ellis, Michael John Shipley, Jay P. Lefkowitz, Adam T. Humann and Yosef Mahmood for Petitioners Teva Pharmaceuticals USA, Inc., Duramed Pharmaceuticals Sales Corp., Inc., and Barr Pharmaceuticals, Inc.

Munger, Tolles & Olson, Jeffrey I. Weinberger, Stuart N. Senator and Blanca F. Young for Petitioners AbbVie Inc. and Abbott Laboratories.

Horvitz & Levy, Jeremy Brooks Rosen, Stanley H. Chen; Janet Y. Galeria; and Heather Lynn Wallace for Chamber of Commerce of the United States of America and California Chamber of Commerce as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Tony Rackauckas and Todd Spitzer, District Attorneys, Joseph D'Agostino, Assistant District Attorney, Kelly A. Ernby, Deputy District Attorney; Robinson Calcagnie, Mark P. Robinson, Jr., and Kevin F. Calcagnie for Real Party in Interest.

Dennis J. Herrera, City Attorney (San Francisco), Yvonne R. Meré and Owen J. Clements, Deputy City Attorneys; Michael Feuer, City Attorney (Los Angeles), Michael M. Walsh and Monica D. Castillo, Deputy City Attorneys; Mara W. Elliot, City Attorney (San Diego), Mark D. Ankcorn, and Kathryn Turner, Chief Deputy City Attorney, Kristine Lorenz, Deputy City Attorney; Richard Doyle, City Attorney (San Jose), Nora Frimann, Assistant City Attorney; James R. Williams, County Counsel (Santa Clara), Greta S. Hansen and Danny Chou, Chief Assistant County Counsel, Laura S. Trice, Deputy County Counsel; Barbara J. Parker, City Attorney (Oakland), Maria S. Bee, Chief Assistant City Attorney, Erin B. Bernstein, Deputy City Attorney; Alison E. Leary and Jennifer B. Henning for City Attorneys, League of California Cities and California State Association of Counties as Amici Curiae on behalf of Real Party in Interest.

Law Office of Valerie T. McGinty and Valerie T. McGinty for Consumer Attorneys of California as Amicus Curiae on behalf of Real Party in Interest.

Xavier Becerra, Attorney General, Nicklas A. Akers, Assistant Attorney General, Michele R. Van Gelderen, Daniel A. Olivas, Hunter Landerholm, and David A. Jones, Deputy Attorneys General, for

Attorney General as Amicus Curiae.

Mark Louis Zahner; and Thomas A. Papageorge for the California District Attorneys Association as Amicus Curiae.

Jeffrey S. Rosell, District Attorney (Santa Cruz), Douglas B. Allen, Assistant District Attorney, for Santa Cruz County District Attorney as Amicus Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Kelly A. Ernby
Deputy District Attorney
401 Civic Center Drive
Santa Ana, CA 92701-4575
(714) 834-3600

Yvonne R. Meré
Deputy City Attorney
Fox Plaza
1390 Market St., 6th Floor
San Francisco, CA 94102-5408
(415) 554-3874

Jay Lefkowitz
Kirkland & Ellis LLP
601 Lexington Ave.
New York, NY 10022
(212) 446-4800